Burglary, at common law, is defined to be the breaking and entering the dwelling-house of another, in the night-time, with intent to commit a felony therein. Roscoe Cr. Ev., 298; S. v. Langford,12 N.C. 253; S. v. Jenkins, 50 N.C. 430. Every permanent building in which the owner or renter and his family, or any member thereof, usually and habitually dwell and sleep is deemed a dwelling in which this crime may be committed. See Roscoe Cr. Ev., 299, and the authorities there referred to, and S. v. Jenkins, ubi supra. The term "dwelling-house" includes within it not only the house in which the owner or renter and his family, or any member of it, may live and sleep, but all other houses appurtenant thereto, and used as part and parcel thereof, such as kitchen, smokehouse, and the like: provided they are within the curtilage, or are adjacent or very near to the dwelling-house. S. v.Langford, ubi supra; S. v. Whit, 49 N.C. 349. If the kitchen, smokehouse, or other house of that kind be placed at a great distance from the dwelling, and particularly if it stand outside of the curtilage or inclosed yard, it cannot be considered a part of the dwelling-house for the (473) purpose of being protected against a burglary. The reason is that the law protects from unauthorized violence the dwelling-house and those which are appurtenant, because it is the place of the owner'srepose; and if he choose to put his kitchen or smokehouse so far from his dwelling that his repose is not likely to be disturbed by the breaking into it at night, it is his own folly. In such cases the law will no more protect him than it will when he leaves his doors or windows open. S. v.Langford, ubi supra.
The principles which we have thus stated as establishing the kind of house in which a burglary may be committed, we do not understand the counsel on either side to dispute. In their application to the facts of the case now before us, the counsel for the prisoner contends: (1) That the house in which the superintendent Pulliam slept was not such an one as the law recognizes as a dwelling-house; and (2) if it were, the smoke or meat house which was broken open was so situated in reference to it that it could not be considered as a part or parcel of it. *Page 303 
Upon the first point, our opinion is against the position taken by the prisoner's counsel. The building is described to be a small log house, and is called a log cabin; but it appears to have been a substantial, permanent one, and therein differs from a tent or a booth erected in a market or fair, in which no burglary could be committed, although the owner lodges in it. See 1 Hawk. Pl. Cr., ch. 38, sec. 35; 1 Hale, Pl. Cr., 559; Roscoe Cr. Ev., 300. This house was in truth the dwelling-house of the owners of the tobacco factory, and not of the superintendent, Pulliam, he being only their servant or employee. See S. v. Curtis, 20 N.C. 222. But if it were taken to be the dwelling of Pulliam, there is a count in the indictment which so states it.
As to the second position taken for the prisoner, there is (474) perhaps more doubt, but upon mature consideration we think it is in his favor. The dwelling-house in which Pulliam usually slept was uninclosed, and of course had no curtilage or inclosed yard; and the smokehouse stood upwards of a hundred feet from it. The factory and the smokehouse had a common inclosure, from which the log dwelling was excluded. Under these circumstances, it seems too much to say that the smokehouse was appurtenant to the log dwelling-house. Indeed, it did not appear to have been used as such; for Pulliam, who slept in it, did not carry the key to it, except occasionally; that being usually carried by the acting manager of the partnership, who lived and slept in a dwelling-house about a quarter of a mile off. The smokehouse was doubtless used for the purpose of storing meat and other things for the use of all the persons, white and black, who were engaged in the tobacco factory established at that place. It was the "carelessness or indifference" of the proprietors which placed it in such a situation that it would not enjoy that protection which the law affords against a burglarious entry.
PER CURIAM. Error.
NOTE. — As to what is a dwelling-house, etc., in which burglary can or cannot be committed, vide S. v. Mordecai, 68 N.C. 207; S. v.Outlaw, 72 N.C. 598; S. v. Potts, 75 N.C. 129. As to persons in whom to charge the property, vide S. v. Outlaw, 72 N.C. 598; S. v. Wincroft,76 N.C. 38; S. v. Matthews, 76 N.C. 41; S. v. Davis, 77 N.C. 490.
Cited: S. v. Pressley, 90 N.C. 733. *Page 304