## STATE OF NORTH CAROLINA v. ROBERT MILLS
### No. 6910SC410
(Filed 22 October 1969)

1. **Criminal Law § 75— confession — admissibility — police interrogation — repeated request for counsel**

   Where defendant at the time of his arrest unequivocally requested that he be permitted to contact his lawyer but the request was denied by the arresting officers, and where defendant repeated his request in the interrogation room of the police station and was permitted to make two telephone calls to an attorney, which calls were unsuccessful, the defendant had clearly indicated his decision to remain silent and to exercise his privilege against self-incrimination; and the confession obtained during the subsequent interrogation of defendant is not admissible in evidence in the absence of a showing by the State that defendant properly waived his right to counsel.

2. **Criminal Law § 76— confession — prerequisites of admissibility**

   In order that a confession resulting from an in-custody interrogation be properly admitted into evidence, the State must show that (1) the defendant knowingly and intelligently waived his right to retained or appointed counsel and (2) the defendant knowingly and intelligently waived his privilege against self-incrimination.

3. **Criminal Law § 75— admissibility of confession — mental coercion**

   A confession can be obtained by mental as well as physical coercion.

4. **Constitutional Law § 32— right to counsel — waiver**

   Defendant's waiver of right to counsel may not be presumed from the fact that a confession was obtained or that the record is silent concerning such a waiver.

APPEAL by defendant from *McKinnon, J.,* Second April 1969 Regular Session of Superior Court held in WAKE County.

Defendant was tried upon a proper bill of indictment charging him with the felonies of breaking and entering with intent to steal, larceny, and receiving. The first two counts in the bill of indictment charge, in substance, that the defendant on 28 March 1969 did break and enter a building occupied by George Johnson, with intent to steal, and did steal money and other valuables therefrom. The case was submitted to the jury on the charges of breaking and entering with intent to steal and larceny. The verdict was guilty as charged.

From judgment of imprisonment as a youthful offender, the defendant appealed to the Court of Appeals.

*Attorney General Robert Morgan and Staff Attorney Richard N. League for the State.*

*Hatch, Little, Bunn, Jones & Liggett by Thomas D. Bunn for defendant appellant.*

MALLARD, C.J.

**[1]**    Defendant's only assignment of error is to the admission into evidence of his own confession.

The evidence tended to show that defendant, 18 years of age, and his brother, 22 years of age, were both arrested at about the same time on separate warrants for participation in the same crime, which was alleged to have been committed on 28 March 1969. Both were on probation. At the time he was arrested, defendant requested that he be permitted to contact his lawyer. This request was denied at that time. Then the defendant and his brother were taken to a car by the arresting officers, warned of their rights against self-incrimination and right to counsel, and then transported to the police station. At the police station each was placed in a separate interrogation room. The defendant was again advised of his constitutional rights against self-incrimination and to counsel, after which he again asked that he be permitted to call an attorney. Permission was granted and defendant made at least two futile attempts to contact his attorney. Thereafter, the defendant was placed in the interrogation room again, and the following occurred.

The officers questioned defendant's brother in another interrogation room and obtained a confession from him. The defendant's brother was then placed in an interrogation room with the defendant. After this, Mr. Castleberry, a witness used by the State at the trial, brought in and placed on a table in the interrogation room a coin collection which had been stolen from George Johnson's home and which Castleberry had purchased from defendant's brother. According to the record, Mr. Castleberry did not say anything to the defendant or his brother. Defendant and his brother were in such a position that they could see Mr. Castleberry when he came in the interrogation room. The officers were not present at that time. After Mr. Castleberry left, the officers returned. Then the defendant's brother, in the presence of the defendant, told the officers what happened. Apparently this was the second time that defendant's brother had confessed. After this and before carrying the defendant to jail, the officers asked him if he had anything he wanted to say about it. The defendant thereupon confessed. He admitted that he took part in the commission of the crime charged and received part of the stolen coins. This confession was used against the defendant at the trial.

The trial court found upon the evidence presented on *voir dire* that:

"[T]he facts to be as testified by Mr. Pierce and in addition as stipulated by the counsel; and will find that the defendant was adequately warned of his right to remain silent; that anything he said could be used against him, of his right to counsel, and of his opportunity to have counsel appointed if unable to employ counsel, his right to stop answering questions and to have a lawyer present during questioning and will find that after such warnings and after efforts to call an attorney, the defendant made statements to the officers and the Court will find those statements were voluntarily and understandingly made after warning and advice as to his rights and without duress or coercion or promise and will find that the statements are admissible in evidence. . . ."

In *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court of the United States said:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. *If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." [Emphasis Added.]

**[1]** The defendant, immediately upon arrest and thereafter as he was afforded opportunity, continued to assert his desire to contact an attorney. We think under the facts in this case that the defendant, by asking to be permitted to contact his attorney, clearly indicated his decision to remain silent and exercise his Fifth Amendment privilege against self-incrimination. The United States Supreme Court said clearly in *Miranda,* "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present."

In the case before us the officers did not cease to interrogate the

defendant who was under arrest. In fact, from this record it seems as if they set the actors in motion with the interrogation room as the stage to bring about the confession obtained. This consisted of returning the 18-year-old defendant to the interrogation room after he was unable to contact his lawyer. Then the brother, who had confessed upon being interrogated separately, was brought into the same interrogation room with the defendant, and the two were left alone. The record is silent as to how long the two of them remained alone there in the interrogation room or what, if anything, they said to each other. While they were alone in the interrogation room, Mr. Castleberry, the purchaser from defendant's brother of the stolen coins, came in and without saying anything put the stolen coins on a table and left. After that the officers returned, and the defendant's brother repeated to the officers, in the presence of the defendant, what had happened. The officer testified, *"I asked him or his brother told me in front of him what happened, and I asked him if he had anything he wanted to say about it and that is when he told me."* [Emphasis Added.] Clearly, this amounted to an interrogation of the defendant, in the absence of an attorney, after the defendant had expressed a desire for and made an effort to obtain an attorney. In the absence of a showing by the State of a proper waiver of his right to an attorney, the confession thus obtained may not be used against the defendant at the trial.

In *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), the defendant was denied the right to see and talk to his attorney and was not informed of his right to remain silent. In addition, his attorney was present and repeatedly requested and was denied permission to contact his client. The defendant made incriminating statements which were admitted into evidence. The court held that the police investigation had focused on the accused as a suspect rather than a general investigation, and the refusal to honor the accused's request to consult with his attorney was a denial of his constitutional rights. The court also held that the incriminating statements obtained by the officers under such circumstances should not have been admitted into evidence.

In *Frazier v. Cupp,* 394 U.S. 731, 22 L. Ed 2d 684 (1969), the defendant was given a "somewhat abbreviated description of his constitutional rights" and then questioned. During the questioning, the defendant said, "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now." The court, after distinguishing the factual situation from *Escobedo,* said:

"Here, on the other hand, it is possible that the questioning officer took petitioner's remark not as a request that the interrogation cease but merely as a passing comment. Petitioner did not pursue the matter, but continued answering questions. In this context, we cannot find the denial of the right to counsel which was found so crucial in Escobedo."

*Frazier* is distinguishable from the case before us. In *Frazier* the defendant did not unequivocally assert his desire to contact a lawyer. Moreover, *Frazier* was tried subsequent to the decision in *Escobedo* and prior to the effective date of the decision in *Miranda*. Concerning this, the Court said:

"Petitioner argues that his statement about getting a lawyer was sufficient to bring Escobedo into play and that the police should immediately have stopped the questioning and obtained counsel for him. We might agree were Miranda applicable to this case, for in Miranda this court held that '[i]f . . . [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.' "

The defendant here, from the moment of arrest, unequivocally asked and repeated the request that he be permitted to contact his lawyer.

The investigation was conducted with dispatch. The questioning of defendant was continued, and before the defendant could contact a lawyer to represent him, he had confessed.

In the case of *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968), the defendant was described as "a dull, retarded, uneducated, indigent boy 20 years old who had left school before he completed the third grade." The Supreme Court of North Carolina held that his failure to request a lawyer was not a waiver of his right to be represented by counsel at his in-custody interrogation.

In *State v. Thorpe, supra,* the Supreme Court said:

"The Court, at the conclusion of the voir dire examination, did not make any findings with respect to counsel. The evidence before the Court was not sufficient to justify a finding that counsel at the interrogation was offered, or the defendant's right thereto was understandably waived. In concluding the defendant was entitled to have counsel at his interrogation, and the right was not waived, we are no longer permitted to rely on the presumption that a confession is deemed to be voluntary until and unless the contrary is shown. Our rules to that effect

have been discussed and applied in many decisions. *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *State v. Bines,* 263 N.C. 48, 138 S.E. 2d 797; *State v. Goff,* 263 N.C. 515, 139 S.E. 2d 695; *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363.

Recent decisions of the United States Supreme Court, however, have forced us to re-examine our trial court practice with respect to counsel in cases in which constitutional rights against self-incrimination are involved. Not only is the accused entitled to representation at the trial, but under certain circumstances, he is entitled to counsel at his in-custody interrogation. *If the accused is without counsel, and is indigent, counsel must be provided by the authorities, or intelligently waived.*" [Emphasis Added.]

On 4 April 1969 defendant was adjudged to be an indigent and counsel was appointed to represent him. We may assume, therefore, that the defendant was an indigent at the time he was arrested and interrogated. The record does not disclose the mental ability of the defendant. It is noted that the defendant did not request the officers to supply counsel. His request was that he be permitted to contact counsel. However, the authorities did not offer to provide counsel for him and there was no evidence or finding that his right to counsel during his in-custody interrogation was intelligently waived.

In *Miranda v. Arizona, supra,* the Court also said:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo v. Illinois,* 378 US 478, 490, note 14, 12 L ed 2d 977, 986, 84 S Ct 1758. This Court has always set high standards of proof for the waiver of constitutional rights, *Johnson v. Zerbst,* 304 US 458, 82 L ed 1461, 58 S Ct 1019, 146 ALR 357 (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

An express statement that the individual is willing to make a

statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

[2-4]    Applying the above rule in this case, the State had to demonstrate compliance with two requirements before the confession, resulting from this in-custody interrogation, could be properly admitted into evidence. The first was that the defendant knowingly and intelligently waived his privilege against self-incrimination. The second was that this was done after the defendant had knowingly and intelligently waived his right to retained or appointed counsel. Even though the defendant was advised of his rights as required by *Miranda,* we think that the circumstances here indicate that there was an overbearing of the will of the defendant in such a subtle way that it resulted in overcoming the free choice of the defendant, and the statement became the product of compulsion. A confession can be obtained by mental as well as physical coercion. *Blackburn v. Alabama,* 361 U.S. 199, 4 L. Ed. 2d 242, 80 S. Ct. 274 (1960). See also concurring opinion in *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344 (1965). Moreover, there was no evidence of, and no specific finding by the judge that the defendant knowingly and intelligently waived his right to retained or appointed counsel. *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968). Such may not be presumed from the fact that a confession was obtained or that the record is silent concerning such a waiver. *Miranda v. Arizona, supra.*

For error committed in the admission of the confession, the defendant is awarded a

New trial.

MORRIS and HEDRICK, JJ., concur.