**UNITED STATES of America ex rel. Ronald DOSS, Petitioner-Appellant,**

v.

**Peter BENSINGER and John Twomey, Respondents-Appellees.**

No. 71–1582.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1972.

Decided June 15, 1972.

Rehearing Denied July 21, 1972.

Certiorari Denied Oct. 16, 1972. See 93 S.Ct. 239.

James Brian Haddad, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., James B. Zagel, Melbourne A. Noel, Jr., Asst. Attys. Gen., Chicago, Ill., for respondents-appellees.

Before DUFFY, Senior Circuit Judge, and CUMMINGS and HAMLEY,* Circuit Judges.

DUFFY, Senior Circuit Judge.

One Lindford Marshall was shot by a gunman during an armed robbery of his grocery store in South Beloit, Illinois, on April 3, 1967.

Petitioner and a co-defendant, Ophem Falconer, were arrested for the crime the following morning after a raid on their motel room in Rockford, Illinois, by sheriff's police.

The murder weapon (a pistol), several hundred dollars in cash and a revolver owned by Marshall were found in or around the Rockford motel room which had been occupied by defendants.

* Circuit Judge Frederick G. Hamley of the Ninth Circuit is sitting by designation.

There was and is no claim that petitioner herein used a gun or any kind of weapon during the robbery.

The chain of events leading to the custodial confrontation which produced the murder gun, began with the arrest of petitioner and his co-defendant by the sheriff's police on April 4, 1967, in the early morning hours. After having been advised of his constitutional rights by the officers who had taken petitioner into custody, he was asked by the officers to waive these rights. However, petitioner remained mute, refusing to divulge his name or age. Petitioner then was booked and incarcerated.[1]

About one hour later, another pair of police officers advised petitioner of his rights. Petitioner again indicated that he would make no statement.

After Doss had been placed in a cell at the Winnebago County jail, co-defendant Falconer confessed and apparently suggested that petitioner Doss had hidden the gun.

Petitioner was then taken to one Captain Iasparro's office where various police officers were present with Falconer. Falconer told petitioner that he had confessed and asked petitioner to show the police officers where the gun was hidden. A short time thereafter, petitioner did indicate the location of the buried gun and currency.[2] He then led the police to the location where the gun was buried near the motel where he and Falconer had been apprehended, and subsequently the gun was entered into evidence.

Falconer did not testify at the motion to suppress as to what, if anything, he and the police had agreed upon before Falconer confronted Doss.

In the State Court, a single attorney was appointed to represent both Doss and Falconer. The trial court denied a motion for severance. Petitioner filed a pretrial motion to suppress the murder weapon, claiming it was discovered through a violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court denied this motion. The weapon was admitted into evidence along with proof of petitioner's conduct leading the officers to the weapon and statements made by petitioner during this time.

A jury found both defendants guilty. The Illinois Supreme Court affirmed the conviction but did enter an order that each defendant be re-sentenced because of an error in the manner in which the jury had been qualified for the death sentence. People v. Doss, 44 Ill.2d 541, 256 N.E.2d 753 (1970). The original trial judge imposed sentence on each defendant of not less than 75 years nor more than 100 years in the Illinois State Penitentiary, which sentence petitioner is now serving.

Petitioner Doss proceeded *in forma pauperis* and petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) which petition was denied by the District Court. In the petition, Doss alleged that the state trial record demonstrated a *Miranda* violation, and relief should be granted for this reason. In the alternative, he argued that he was entitled to an evidentiary hearing in federal court with respect to deficiencies in state court proceedings. The District Court denied the habeas corpus petition and declared that no evidentiary hearing was necessary, but granted a certificate of probable cause for appeal.

---

1. One police officer asked petitioner Doss several times to identify himself and whether he wished to waive his *Miranda* rights, stating at trial with respect thereto "if I asked him once, I probably asked him a dozen times." (State record of trial, pages 235–236).

2. Detective Renfro testified to the effect that Doss was brought "to the office because Falconer wanted to talk to him to get the gun." (State record of trial, page 156).

■■ It is apparent from the fact situation of the case at bar that Doss desired to remain silent notwithstanding continual attempts by the police to interrogate him. Close scrutiny of the testimony at trial with respect to the police officers' persistent inquiries fails to demonstrate a justification for such questioning absent the presence of counsel for the defense. As the Supreme Court indicated in Miranda v. Arizona, *supra*, where custodial interrogation proceeds without the presence of defense counsel, the Government bears a "heavy burden" of demonstrating that the suspect's constitutional rights have been respected.

In *Miranda, supra,* the Supreme Court has clarified the permissible scope of custodial interrogation even after a waiver of constitutional rights by the suspect, an element which was not present herein. The Court stated with respect thereto at pages 473–474, 86 S. Ct. at page 1627:

> "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

Pertinent is the discussion of *Miranda's* application in our decision in United States v. Crisp, 435 F.2d 354 (7 Cir., 1970), at page 357:

> "Both the letter and spirit of the Supreme Court's decision in *Miranda* call for condemnation of even this seemingly innocuous police conduct. The procedural safeguards imposed in that case were premised upon the observation that custodial interrogation in the absence of defense counsel is inherently intimidating and destruc-

tive of free enjoyment of the constitutional privilege against self-incrimination. To be effective, those safeguards must be fully observed, and the rights of the suspect must be jealously guarded. Not even the slightest circumvention or avoidance may be tolerated. The rule that interrogation must cease, in whole or in part, in accordance with the expressed wishes of the suspect means just that and nothing less. . . ."

Furthermore, the police officers not only continually confronted Doss, imploring him to talk after he chose to remain silent, but a confrontation was arranged with his co-defendant Falconer in order to elicit incriminating testimony. Such confrontations with co-defendants has been condemned in other courts as a violation of *Miranda* protections, and the evidence elicited therefrom has been held inadmissible absent some other affirmative indication of waiver.

In point is the decision in United States of America v. Barnes, 432 F.2d 89 (9 Cir., 1970) at page 91:

> ". . . The rule was established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) that if the defendant '. . . indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no question. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.' Id. at 444–445, 86 S.Ct. at 1612.

> "The evidence in this case is uncontroverted that both Knox and Barnes had specifically indicated that they did not wish to be interrogated further. Each refused to sign a waiver of his constitutional rights and that refusal was noted by the authorities. Thus, the subsequent confrontation with Miss Trosello and the interroga-

tion that followed, for the obvious purpose of getting defendants to abandon their self-imposed silence, were in flagrant violation of the rule as set forth in Miranda. . . ." [See State v. Mills, 6 N.C.App. 347, 170 S.E.2d 189 (1969).]

We are of the opinion that such police-initiated action as evidenced in this case does not yield evidence which properly can be admitted absent some other affirmative indication by a defendant that he desires to waive his Fifth Amendment rights.

■ For the first time, the respondents argue on this appeal that if the trial court erred under the *Miranda* ruling in denying petitioner's motion to suppress, such error was harmless. As noted, the State was erroneously permitted to prove that the petitioner led the police to the buried weapon, to introduce the weapon into evidence, and to demonstrate that this was the murder weapon. The untainted evidence against petitioner was not so overwhelming as to foreclose "a reasonable possibility that the improperly admitted evidence contributed to the conviction." Schneble v. State of Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705; see Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284. "[B]ased on our own reading of the record and on what seems to us to have been the probable impact of . . . [the tainted evidence] on the minds of an average jury," Harrington v. California, *supra*, we cannot declare our belief that the improperly admitted evidence was harmless beyond a reasonable doubt. Cf. United States ex rel. Dudley v. Brantley, 461 F.2d 653 (7 Cir., 1972).

The judgment of the District Court herein must be and is reversed with instructions to grant the writ of habeas corpus.

Reversed.