218 So.2d 876 (1969)
Edward E. SPURLIN
v.
STATE of Mississippi.
No. 45085.
Supreme Court of Mississippi.
February 17, 1969.
*877 Robert E. Jones, Henry W. Hobbs, Jr., Brookhaven, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
ETHRIDGE, Chief Justice.
Edward E. Spurlin, appellant, was convicted of manslaughter in the Circuit Court of Lincoln County, and was sentenced to serve ten years in the penitentiary. His defense was that the homicide was the result of an accident and was thus excusable under Mississippi Code 1942 Annotated section 2219 (1956). Since the jury's verdict was amply supported by the evidence, we affirm the conviction.
The shooting occurred at night at defendant's residence in Lincoln County. His wife and the deceased, his stepdaughter, Mrs. Edna Simmons, had just returned home after being out drinking whiskey, according to defendant. An argument arose between the defendant and Mrs. Simmons, and he ordered her to leave the house. When she refused he went into a back room and unlocked a chifforobe, took his pistol from a cigar box, and returned to the kitchen where his wife and stepdaughter were waiting. As to what happened at this point, the defendant made several statements, all partially inconsistent with each other.
One statement which defendant made was that he was attempting to scare his stepdaughter and did not know the gun was loaded. He was holding it about shoulder height, threatening her with it, and the gun went off. Another was that he was holding the gun down at his side, and that Mrs. Simmons, who was facing him, grabbed the gun and it went off, evidently when she was struggling to get it. Another version given at another time by defendant was that he and his stepdaughter had been arguing, and he went to a room to get the gun to make her leave his house; that as he was coming down the hall, she grabbed him from behind, spun him around, and as he turned the gun went off. Another statement by defendant was that he hit at Mrs. Simmons to make her be quiet, and the gun went off.
The bullet entered the lower left region of Mrs. Simmons' skull, and exited at a *878 45-degree angle from her forehead below the hairline. She lay on the floor until the ambulance arrived, and later that night she died without regaining consciousness. Within minutes after the shooting, Reverend Ennis, pastor of the defendant's church, arrived at the Spurlin residence in response to a telephone call from Spurlin's wife. Ennis drove defendant to the McComb City Hospital in his car. In reply to the minister's question as to who did the shooting, Ennis, the defendant's witness, testified that Spurlin said, "I'm the one that is supposed to have done it;" that he was holding the gun and there was a struggle, and it was fired accidentally.
Spurlin went to the hospital, where Bobby Bellipani, a McComb City policeman who doubled as an ambulance driver, placed him under arrest, after having been informed by telephone that a deputy sheriff and two highway patrolmen were on their way to the hospital. Bellipani testified that he took out a card, read Spurlin his Miranda rights, and asked him if he understood them, to which he replied that he did. This Spurlin denied. Bellipani did not interrogate defendant.
When Deputy Sheriff Smith and Highway Patrolmen Underwood and Gibson arrived, they took Spurlin into custody, and asked him if he had had his rights explained to him and if he understood them. He said that he did. After they left the hospital in Gibson's car, Spurlin asked if he could get a lawyer. Smith told him he could just as soon as they got to Brookhaven, and that he did not have to say anything if he did not want to. Smith then asked the defendant where the gun was, and he replied that it was at his home and he would take them to it. They then proceeded to his home, where Spurlin went into the back room, unlocked the chifforobe, and handed the gun to the officers. One cartridge had been fired, and a cartridge hull was stuck in the gun, which was admitted into evidence.
There was an evidentiary hearing to determine the admissibility of the several statements made by Spurlin. At the conclusion of the testimony by several officers and the defendant, the trial court concluded on ample evidence that defendant had been properly advised of his Miranda rights before any statements had been made by him; and all of his statements were voluntarily and knowingly made, after having waived the presence of an attorney, and thus were admissible in evidence. Defendant had stated that he was hard of hearing, but the court from the testimony of officers and its own observations of defendant's actions and reactions in the courtroom concluded that he was able to hear and did hear that which was said to him by the officers.
The defendant assigns as error that his verbal admissions and his pistol were obtained in violation of his constitutional rights and were thereby inadmissible. In attempting to bring this case under the exclusionary rules announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he contends that, although he was advised of his rights, the evidence did not show that he understood them and made an effective, voluntary waiver of them.
There was sufficient evidence to support the trial judge's conclusion that defendant had been fully and completely advised of his rights, that he fully understood the nature and extent of them, and that his statements had been made voluntarily without promise or coercion. However, defendant further contends that after he had asked for an attorney, Deputy Sheriff Smith should not have questioned him in regard to the pistol used to shoot Mrs. Simmons. Nevels v. State, 216 So.2d 529 (Miss. 1968), held that a recognized exception to the Miranda rules is a statement freely volunteered without compelling influences. The evidence reflects that Spurlin freely volunteered to get the pistol, without any compelling influence by the officers.
*879 Defendant next contends that, since his version of the events was reasonable and uncontradicted by any witness, the physical facts or facts of common knowledge, it should have been accepted under the Weathersby rule. The rule as set out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), is as follows:
Where defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. (165 Miss. at 209, 147 So. at 482).
Although this is a meritorious rule it has no application here. The only eye witnesses in the case were the defendant and his wife, neither of whom testified. Assuming without deciding that the requirements of this rule may be satisfied if the defendant's witnesses testify as to the defendant's version of the facts, nevertheless, his own statements show that he had gone to his room and got his gun, that he was trying to make Mrs. Simmons leave, that he either handled the weapon with a gross disregard for human life, or that he hit at her in a heat of passion and the gun fired. She had no weapon. Defendant gave several conflicting versions. The jury could consider all of these circumstances and inconsistencies in finding defendant guilty of manslaughter.
The state was granted instructions to the effect that the killing of a human being by the culpable negligence of another, and without authority of law, is manslaughter; that culpable negligence is such negligence as evinces a flagrant and reckless disregard for the safety of others, or wilful indifference to the injury liable to follow. Another told the jury that manslaughter is the killing of a human being without malice, in the heat of passion, without authority of law, and not in necessary self defense. These instructions were proper under the state's version of the evidence. Miss.Code 1942 Ann. §§ 2224, 2226, 2232 (1956). Whether the homicide was manslaughter or an excusable accident was a question for the jury. May v. State, 199 So.2d 635, 642 (Miss. 1967); McGee v. State, 50 So.2d 394 (Miss. 1951); 40 Am.Jur.2d Homicide §§ 112, 253 (1968).
There was no error in the court refusing to grant a requested instruction on excusable homicide, since it was duplicative of two other somewhat similar instructions granted defendant on the same issue. The jury was amply instructed as to the law, and since there were no reversible errors, the conviction is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, INZER and ROBERTSON, JJ., concur.