## GERALD DAVID BAZZELL v. STATE OF MARYLAND

[No. 95, September Term, 1968.]

*Decided March 4, 1969.*

*Charles Philip Brown* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Gerald David Bazzell, was tried in the Circuit Court for Baltimore County, without a jury, on two indictments. On the first indictment he was convicted of larceny and burglary and on the second indictment of breaking with intent to steal. He was sentenced to be committed to the jurisdiction of the Department of Correction for five years on each conviction, the sentences to run concurrently.

In this appeal it is contended that the appellant's confession was not voluntarily given and that the evidence was legally insufficient to sustain his convictions.

The record indicates that a seventeen-year-old boy observed two individuals, whom he could not identify, come from a wooded area about 9:00 p.m. on the evening of December 21,

1967, carrying a TV set and sundry household articles which they cached behind a tree and then departed from the area. Shortly thereafter he saw a light blue 1965 Chevrolet park under a street light from which the same two individuals alighted, picked up the articles, placed them in the car and drove away. The young boy jotted the license tag number on a match cover and called the police. The automobile was found to be registered in the name of the appellant's wife. There was also testimony that two houses in the area had been broken into while the occupants were away on extended visits.

The appellant was arrested on January 8, 1968, and taken to police headquarters about midnight. Sergeant Zombro of the Baltimore County Police Department testified that Corporal Bedsloe (who did not testify) advised the appellant of his constitutional rights by reading to him from a card (presumably a so-called "Miranda card"), "which he said he understood, and wished not to be interrogated at that time." The next morning at 8:00 a.m. the appellant again declined to make a statement. Approximately three hours later, Sergeant Zombro took lunch to the appellant in his cell and, according to the Sergeant's testimony, the following occurred:

> "A We got to talking, and a statement was made that since it was only he and I there, that this could not be used in court. He admitted to that he did break into the two homes that he is charged with.
>
> Q THE COURT: Who said it could not be used in court?
>
> A THE WITNESS: The defendant stated that since only he and I were there, since it was not part of the interrogation, since he'd waived, stated he did not wish to be interrogated, that it couldn't be used at that time."
>
> * * *
>
> "Q What was your conversation with him at the time that you brought him his lunch?
>
> MR. BROWN: I am going to object again, Your Honor.
>
> THE COURT: I will overrule it.
>
> MR. BROWN: Argument.

THE COURT: Overruled.

A THE WITNESS: It was just—we just got to talking about the offenses. He was saying that, talking about the three charges we had on him, which one was an attempted B and E. He told me that, since only he and I were there, that he did break into the two places that we actually had him charged with B and E, but he did not do the attempted breaking and entering. That was the extent of it, right there.

Q THE COURT: Was that in response to any question which you put to him?

A THE WITNESS: No, sir.

Q THE COURT: You mean he volunteered that, and said, 'Well, I'll tell you this, because I know it can't be used in court'?

A THE WITNESS: Yes, sir, because there was only he and I there.

THE COURT: All right."

On cross-examination, the following occurred:

"Q Did you go back there for any express purpose other than taking lunch back?

A No. It was general, general conversation that was started, but it was nothing along the lines of interrogation.

Q Did you start any general conversation with him?

A I can't remember how it got started, if I started it or if the defendant started it.

Q In other words, out of a clear blue sky he made this statement?

A Just through general conversation. We might have been talking about anything. I've known Jerry in the past. I really don't know, I can't state.

MR. BROWN: No further questions.

THE COURT: Thank you, Sergeant.

MR. BROWN: I am going to renew my objection, for the record.

THE COURT: You move to strike, and the motion is overruled."

The appellant first contends that it was error to permit Sergeant Zombro to testify concerning the reading of the Miranda warnings by Corporal Bedsloe, who did not testify, since such testimony by Sergeant Zombro was hearsay and, therefore, inadmissible. This being so, it is argued, the posture of the case is such that no Miranda warnings were given to the appellant. It is also contended that in any event it is clear that the appellant misunderstood his rights and, therefore, did not knowingly and intelligently waive his privilege against self-incrimination as required by the holding in *Miranda v. Arizona,* 384 U. S. 436.

In *Miranda* the strictures enunciated are directed toward *interrogation* by the police. As stated by Chief Justice Warren (at p. 339) : "More specifically, we deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation * * *." He explains: "By custodial interrogation, we mean questioning *initiated* by law enforcement officers after a person has been taken into custody * * *." (Emphasis added.) It must be recognized that Miranda does not proscribe the use of all statements or confessions.[1] As explicated by the Chief Justice (p. 478) :

> "In dealing with statements obtained *through interrogation,* we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the

---

1. See *Morgan v. State,* 2 Md. App. 440, 442 ("Indeed, *Miranda* is essentially limited to prohibiting evidence of oral or written statements *stemming* from custodial interrogation * * *."); *Clarke v. State,* 3 Md. App. 447 (routine questions as to address, etc., held to have been made in custody but the interrogation was not the type proscribed by *Miranda*); *Carwell v. State,* 2 Md. App. 45 (voluntary "blurt" immediately after arrest held admissible); *Young v. State,* 4 Md. App. 286 (statement made while in custody was volunteered); *Campbell v. State,* 4 Md. App. 448 (incriminating statement made after arrest and while in custody, was not in response to an interrogation within meaning of *Miranda*); *Brown v. State,* 4 Md. App. 261 ("blurt" held admissible).

privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, *but whether he can be interrogated*. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, [footnote omitted] or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis added.)

We think it is clear in the case at bar that the lower court was of the opinion, and we cannot disagree, that the statement given by the appellant to Sergeant Zombro was not elicited or induced as a result of interrogation by the Sergeant but was freely and voluntarily given by the appellant without any of the coercive factors which may normally be involved in a custodial interrogation. Here the appellant on two separate occasions declined to give a statement and no interrogation ensued. The trial judge, obviously, gave credence to Sergeant Zombro's version that the statement was given in the course of a "general conversation" and that "it was nothing along the lines of interrogation." Assessing the credibility of the witnesses is, of course, peculiarly the function of the trial judge. *Thompson v. State*, 5 Md. App. 191, 197; *Gunther v. State*, 4 Md. App. 181, 185. We find, therefore, that the statement here given was not the product of police interrogation but was freely and voluntarily given. Under the circumstances, its admission was not in violation of any of the mandates of *Miranda, supra*. Thus, we do not reach, and accordingly, need not treat the hearsay and waiver objections raised by the appellant.

Finally, it is contended that the confession of the appellant is the only evidence to sustain his conviction and that a "confession of guilt by a person accused of crime uncorroborated by other evidence is not sufficient to warrant conviction." This, however, is not the law. It is well settled that if the *corpus delicti* is proved, and here there is no question concerning its proof, a confession, uncorroborated by other evidence, is sufficient to

sustain a conviction. *Johnson v. State,* 238 Md. 140, 144; *Whitmer v. State,* 1 Md. App. 127, 130. As stated in 2 Wharton's *Criminal Evidence* (12th Ed.) 134: "The criminal agency of the defendant may be shown by his confession alone provided there is adequate corroboration of the *corpus delicti.*" See also 7 Wigmore, *Evidence* (3rd Ed.) §§ 2070-2073.

Accordingly, we find no merit in the appellant's contention that the evidence was legally insufficient to support his convictions. See Md. Rule 1086.

*Judgments affirmed.*