(No. 41165.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
RONALD DOSS *et al.,* Appellants.

*Opinion filed March 24, 1970.*

JOHN I. BEYNON, Public Defender, of Rockford, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and PHILIP G. REINHARD, State's Attorney, of Rockford, (FRED G. LEACH, Assistant Attorney General, and KEITH S. MORSE, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendants, Ronald Doss and Ophem Falconer, were found guilty by a jury in Winnebago County of the murder of Lenford Marshall during a robbery in the victim's grocery in South Beloit, Illinois. The trial court, following the verdict's recommendation, sentenced both defendants to death. Their appeal to this court claims various constitutional errors were committed in the trial court.

The robbery and murder occurred on April 3, 1967. Mrs. Jean Marshall, the wife of the victim, and Gloria Donath, a clerk, were in the store at the time of the rob-

bery. Mrs. Marshall identified Ophem Falconer as the robber who shot her husband and Ronald Doss as the other robber. Mrs. Donath later identified Falconer as the man she saw with the gun on the night of the crimes and Ronald Doss as his accomplice. A .38 caliber revolver, owned by the victim, and approximately $690 in cash were taken by the robbers.

The descriptions of the robbers given to the South Beloit police department were relayed to the Winnebago County sheriff's department. Sheriff's officers, acting upon added information furnished by the South Beloit police department that the suspected robbers were in the Rockford area, began checking motels and hotels in Rockford. Shortly after 5:00 A.M. sheriff's officers ascertained that two men who answered the given descriptions had registered at the Inn Towne Motel. Additional officers were called from the sheriff's office and when they arrived the room occupied by the defendants was entered and they were placed under arrest. A .38 caliber revolver, identified later as the weapon taken from the victim during the robbery, and several hundred dollars in cash were seized after a search of the room and the defendants.

Falconer was apparently taken to the detective bureau in the Winnebago courthouse where he was questioned, and Doss was taken to a lockup located above the detective bureau. Later, officers who had questioned Falconer went upstairs to talk to Doss but after he was advised of his rights, he refused to talk to the officers. They then escorted him to the office where Falconer was detained. Falconer told Doss to show the officers where the murder weapon was hidden. Doss consented without prompting from the police and led the officers back to the vicinity of the motel and there disclosed where the weapon had been buried. Falconer furnished a confession which was admited into evidence at the trial.

The defendants' first claim of error is that the trial

court erred in admitting into evidence the weapon used in the commission of the crime. The argument is that the weapon was inadmissible because the officers persisted in seeking information from Doss, in claimed violation of the command of *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, after he had made clear he was exercising his constitutional right to remain silent. It is said that as a result of this improper proceeding Doss was induced to lead the officers to the weapon. The discovery of the weapon, they contend, was the product of unlawful conduct of the police and was inadmissible.

The conduct specifically complained of was the bringing together of Doss and Falconer, which led to Falconer's telling Doss to reveal to the police the location of the buried gun. It is said that this violated the order of *Miranda* that "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (16 L. Ed. 2d at 723.) However, this argument assumes, and gratuitously, we judge, that the escorting of Doss to Falconer's presence constituted a continuation of interrogation. But there was no interrogation subsequent to his refusal to speak to the officers and no interrogation in a real sense prior to his refusal. Too, the argument overlooks the pronouncement of *Miranda* that "Any statement [or conduct] given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602.) Thus, it is seen that the basic intendment of *Miranda* was to establish standards for interrogation by police. It does not interdict the use of volunteered

and unprompted expressions or conduct by an accused. The record here shows that Doss's disclosure of the place where the gun was buried was not a result of interrogation by the officers but was a free and voluntary act on his part in response to the request to him made by his accomplice. There is no suggestion that he acted under any coercive influence by the police. He had been adequately advised of his rights and his later decision to lead the police to the weapon was his unprompted conduct, so far as the police were concerned. Considering *Miranda's* intendment the gun was properly admitted into evidence. *Cf. State* v. *Gutierrez,* 79 N.M. 732, 449 P.2d 334; *State* v. *Godfrey,* 182 Neb. 451, 155 N.W.2d 438; *Spurlin* v. *State* (Miss.), 218 So.2d 876; *Combs* v. *Commonwealth* (Ky.), 438 S.W.2d 82; *United States* v. *Burley,* 280 F. Supp. 672; *Bazzell* v. *State,* 6 Md. App. 194, 250 A.2d 674.

Next, it is contended that the trial court erred in not suppressing the revolver and $690 in currency taken from the defendants at the time of their arrest, because these were seized without a search warrant. Since the police, the defendants say, knew the defendants were in the motel room and had the only avenue of possible escape barred there was no danger of evidence being destroyed or removed and adequate time to secure a search warrant was afforded. Under such circumstances, the argument is, the failure to obtain a search warrant rendered the search unreasonable under the fourth amendment. The response of the People is that the question is not whether a search warrant could have been obtained but whether the arrest was lawful and would consequently support or justify a search incidental to the arrest. The People argue that the arrest and incidental search were reasonable.

If the search here is to be upheld, it can obviously be only as an incident to a lawful arrest. The arrest in this case was lawful. An arrest by police is authorized without an arrest warrant where officers have reasonable grounds to

believe that the person or persons arrested have committed an offense. (Ill. Rev. Stat. 1967, ch. 38, par. 107—2(c); *People* v. *Wright,* 41 Ill.2d 170, 173.) Reasonable cause does not require evidence sufficient to convict one arrested, but requires only that a reasonable and prudent man having the knowledge possessed by the arresting officer at the time would believe the person had committed an offense. (*People* v. *Wright,* 41 Ill.2d 170, 174; *People* v. *McCrimmon,* 37 Ill.2d 40.) Whether there is reasonable cause to arrest will depend on the facts and circumstances. *People* v. *McCrimmon,* 37 Ill.2d 40; *People* v. *Davis,* 34 Ill.2d 38; *People* v. *Jones,* 31 Ill.2d 240.

Here the defendants and their dress fitted the descriptions of the robbers given by the eyewitnesses of the crime. The officers also had reason to believe that the men they sought were in the Rockford area and did not have an automobile. The motel manager told the officers that the defendants met the descriptions of the robbers and that they did not have a car. The police had reasonable cause to believe the defendants were the men who had committed the robbery and murder.

The defendants, however, argue further that even if the police had reasonable cause to believe the defendants were the men sought, no emergency faced the officers and therefore they should have merely barred the exit route from the motel room and obtained a search warrant before entering the room. The argument cannot be accepted. The officers here faced a situation resembling that which confronted the officers in *People* v. *Barbee,* 35 Ill.2d 407. In *Barbee* this court upheld the action of officers who entered defendant's premises to make an arrest without a proper warrant, saying, at p. 412: "The officers reasonably believed that they were in close pursuit of an armed man who had committed a violent offense of a particularly flagrant type. The 'practical demands of effective criminal investigation and law en-

forcement,' (*Elkins* v. *United States,* 364 U.S. 206, 222, 4 L. Ed. 2d 1669,) required that the defendant be apprehended, regardless of the risks involved in arresting him." The officers here were searching for two obviously dangerous criminals who were to be considered still in active flight from the scene of the robbery and murder. The conduct of the officers was proper.

A search incidental to this arrest was clearly authorized at the time the defendants were apprehended (see *Ker* v. *California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623, *People* v. *Wright,* 41 Ill.2d 170, 173), and we must consider now whether the search made was a proper incidental search.

Recently, in *Chimel* v. *California,* 395 U.S. 752, 23 L. Ed. 2d 685, 694, the Supreme Court reset the limits for such a search. It said: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

Here the revolver and the money were in clothing of the defendants which was found under the bed they were oc-

cupying at the time they were arrested. The evidence was clearly within the "immediate control" of the defendants as stated in *Chimel*.

Another argument presented is that the trial court erred in refusing a continuance at the hearing on aggravation and mitigation to give the defendants an opportunity to call as witnesses persons who would have testified that the death penalty constitutes cruel and unusual punishment prohibited by the eighth amendment. Alternately, the defendants argue that it was error for the court to refuse to admit a book, "The Unexamined Death," in evidence as an alternative to granting the continuance. A contention that the death penalty is of itself, cruel and unusual punishment violating the eighth amendment must be rejected (see *Louisiana ex rel. Francis* v. *Resweber,* 329 U.S. 459, 91 L. Ed. 422, 67 S. Ct. 374.) The death penalty is authorized by section 9—1 of the Illinois Criminal Code (Ill. Rev. Stat. 1967, chap. 38, par. 9—1) and this court has held that "the constitution is not violated as long as such [penalty] is inflicted speedily and without undue pain or torture." (*People* v. *Hurst,* 42 Ill.2d 217, 225.) Accordingly, we cannot perceive error in the trial court's refusal to grant a continuance or receive into evidence the book described.

A final claim of error is that the death sentences imposed on the defendants must be set aside, because of the holding of *Witherspoon* v. *Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, which was handed down after their trial. The Supreme Court held there that a death sentence could not stand if imposed by a jury from which prospective jurors had been excluded for cause simply because they generally were opposed to capital punishment or because they expressed conscientious scruples against imposing the death penalty. See *Bumper* v. *North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788, 1790.

We judge that the trial court, which, of course, did not have the guidance of the language of the later decided

*Witherspoon,* did not meet the requirements of that decision.

The record here discloses that eleven veniremen were excused because, on the *voir dire* examination, they expressed opposition to the death penalty. Seven of these excluded were individually questioned. One of the seven said he was opposed to a capital penalty in any case. Four opposed its imposition in what the trial court in its questioning termed a "proper case." Two were excused when they simply expressed opposition to the punishment. The four others excluded were in a group of veniremen questioned by the trial court. They, too, had signified that they had conscientious objections to imposing the death penalty in a "proper case."

Thus, two of the eleven excluded had but admittedly general objections to the penalty. Eight were excused because of an opposition to the imposition of the punishment of death in a "proper case." In *Witherspoon* the Supreme Court expressly observed that opposition to the infliction of death "in a proper case" is not of itself a sufficient basis for the exclusion of a venireman. (391 U.S. 510 at 514, 515, 20 L. Ed. 2d at 781.) The death sentences imposed here cannot stand.

We have frequently observed that ordinarily a trial court is in a superior position to determine the punishment to be imposed on the convicted. (See *e.g., People* v. *Taylor,* 33 Ill.2d 417.) We believe that here the trial court should fix the penalties.

Accordingly, we affirm the judgments of conviction and vacate the sentences imposed and remand the cause to the circuit court of Winnebago County for resentencing.

*Affirmed, and remanded*
*for resentencing.*