# Illinois Official Reports

## Appellate Court

*People v. Franklin*, 2016 IL App (1st) 140059

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARLON FRANKLIN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0059 |
| Filed | August 24, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-C6-60259; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Patricia Mysza, Cassidey Davis Keilman, and Carolyn R. Klarquist, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Haley Peck, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant Marlon Franklin was charged with eight counts of aggravated unlawful use of a weapon (AUUW) and six counts of unlawful use of a weapon by a felon (UUWF). The jury convicted Franklin of two counts of UUWF, and the trial court later sentenced him to two concurrent six-year terms of imprisonment. He appeals, challenging the sufficiency of the evidence to demonstrate his possession of the firearms and the trial court's denial of his motion to suppress evidence. Because we find that the motion to suppress should have been granted, we reverse.

¶ 2     On March 5, 2011, East Hazel Crest police received a call regarding a theft of cash from room 106 of the Super 8 Motel located at 17220 South Halsted Street. Officer Kenneth Vallow and his partner, Officer Hankins, went to room 106 and met Jasmine Ross, the victim of the theft. Ross described the perpetrator as a 26-year-old, 6-foot-3-inch, 300-pound black male going by the nickname "DB." Ross told the officers they could find "DB" in room 301 and that "DB" was "known to be armed." As the officers approached room 301, they encountered Franklin leaving the room. After the officers identified themselves, Franklin told the officers that room 301 was rented in his name. When asked if he was known as "DB," Franklin told the officers that DB was in his room.

¶ 3     Franklin used his keycard to let the officers into the room. Vallow used a towel to prop open the door. Once inside, the officers observed a large man matching Ross's description sleeping on one of the two beds. The man woke up and the officers began questioning him. Meanwhile Franklin remained standing by the window. On the nightstand between the two beds, Vallow observed a clear plastic bag containing a green, leafy substance, which appeared to be cannabis, and handed the bag to Hankins.[1] Vallow did a quick search of the room and the bathroom and noticed nothing was out of place in the bathroom. In particular, Vallow looked at the ceiling tiles in the bathroom, as experience told him that contraband or weapons were often concealed there. The ceiling tiles appeared undisturbed.

¶ 4     Hankins radioed for a drug sniffing dog. Vallow observed that DB (later identified as David Lathan) was becoming "very nervous" and "tense" and that Franklin also became fidgety. DB then jumped over the bed, pushed past the officers, and ran out of the open door of the room. DB ran down the stairs and proceeded to carjack a vehicle from two individuals who were leaving the parking lot. Hankins and Vallow both gave chase, leaving Franklin alone in the room.

¶ 5     A few minutes later, Vallow realized that Franklin was still in the room and returned to room 301. Vallow walked through the still propped open door to see Franklin exiting the bathroom with a "surprised" expression on his face. Franklin did not tell Vallow he was not permitted to enter the room or ask him to leave. Upon examining the bathroom, Vallow observed that the ceiling tiles had been pushed up two inches. Vallow handcuffed Franklin, had him sit on the bed, and inspected the ceiling tiles in the bathroom. Standing on the toilet, Vallow reached up and felt two plastic bags that he believed contained guns. At that point Vallow did not pull the bags down. Vallow brought Franklin down to his squad car, secured him in the backseat, and went back to the room, recovering from above the bathroom ceiling

---

[1]The record is unclear as to what Hankins did with the suspected narcotics. For purposes of this opinion, we will assume she took custody of the bag.

two plastic bags containing a Lorcin .38-caliber automatic weapon, an extra ammunition clip for that weapon, a Hi-Point 9-millimeter firearm with a full clip, and $153 in cash. The cash was returned to Ross and the guns were inventoried. Vallow never observed Franklin in the bathroom or reaching up to the ceiling tiles.

¶ 6    Based on this evidence, the trial court denied Franklin's motion to quash arrest and suppress evidence. The court ruled that the presence of suspect narcotics in plain view was probable cause for Franklin's arrest and that Vallow had probable cause to search the ceiling tiles because of their notable change in the three-minute period during which Vallow left the room.

¶ 7    The matter proceeded to trial and the parties stipulated to Franklin's status as a felon. Vallow's testimony was consistent with his prior testimony on the motion to suppress.

¶ 8    Franklin's motion for a directed verdict was denied, and the defense rested without calling any witnesses or introducing any other evidence. The jury found Franklin guilty on both counts of UUWF.

¶ 9    Franklin's motion for a new trial and his motion to reconsider the ruling on his motion to quash and suppress were denied. The court sentenced Franklin to six years' incarceration.

¶ 10                                    ANALYSIS

¶ 11   Franklin raises a number of issues relating to the sufficiency of the State's evidence, the trial court's response to a question from the jury and the claimed ineffective assistance of trial counsel. But because it is dispositive, we need only address Franklin's contention that the trial court erred in denying his motion to suppress evidence. On this issue, Franklin first contends that Vallow was not justified in reentering the room after he left to pursue Lathan so that Vallow's "second entry" into the room was without Franklin's consent and not justified by any other exception to the warrant requirement. Franklin further contends that even if Vallow's reentry is deemed consensual, his search of the area above the bathroom ceiling tiles could not be justified as a search incident to Franklin's arrest or by exigent circumstances. The trial court rejected these contentions, finding that Franklin's original consent encompassed Vallow's return to the room and that Vallow had probable cause to arrest Franklin based on the plainly visible bag of cannabis in between the two beds. Further, once Vallow observed that the bathroom ceiling tiles had been disturbed during his brief absence, the court found he had probable cause to search the area above those tiles.

¶ 12   We apply a bifurcated standard of review when reviewing a trial court's decision denying a defendant's motion to quash arrest and suppress evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). In reviewing questions of fact, we defer to the trial court's factual findings and reverse them only if they are contrary to the manifest weight of evidence. *Id.* The question of whether, based on the facts as found by the trial court, suppression is warranted is a legal question we review *de novo*. *Id.*

¶ 13   The fourth amendment of the United States Constitution protects the rights of people "to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures." U.S. Const., amend. IV. The Illinois Constitution offers similar protection. Ill. Const. 1970, art. 1, § 6. A warrantless search is *per se* unconstitutional unless it falls within recognized exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). In Illinois the exceptions are (1) probable cause accompanied by exigent circumstances, (2) a

search incident to arrest, and (3) a search based on consent. *People v. Harrell*, 226 Ill. App. 3d 866, 872 (1992). "Consent is not valid unless it is voluntary, and in order for consent to be voluntary, it must be freely given without duress or coercion (express or implied)." *People v. LaPoint*, 353 Ill. App. 3d 328, 332 (2004). Generally, whether consent has been freely given is a factual question that the reviewing court will accept unless it is clearly unreasonable. *People v. Turnipseed*, 274 Ill. App. 3d 527, 530 (1995).

¶ 14　　We find that Vallow's reentry into Franklin's motel room was consensual. There is no dispute that Franklin consented to Vallow's initial entry into his room. Franklin contends, however, that once the officers accomplished their stated purpose for entering the room, *i.e.*, to find "DB," their departure to pursue Lathan required Vallow to seek and obtain Franklin's consent before reentering the room. And because (i) there is no evidence that Franklin consented to what he characterizes as the second entry and (ii) no other exception to the warrant requirement exists, his motion to suppress the recovered weapons should have been granted.

¶ 15　　We disagree with the premise of Franklin's argument that there were two entries into his room: one consensual and one without consent. On the facts presented here, we find that there was one consensual search and that the interruption of the search as a result of Lathan's flight did not render Vallow's reentry nonconsensual.

¶ 16　　An analogous situation was presented in *People v. Logsdon*, 208 Ill. App. 3d 989 (1991). In *Logsdon*, the defendant, who was hospitalized, asked the police to search her home because she was concerned that her ex-husband, who had been harassing her, was planning to break-in. *Id.* at 991. In response to defendant's request, a police officer went to her home and found pry marks on the kitchen door and chipped wood next to the lock. *Id.* The door was also unlocked. *Id.* Upon entry, the officer searched each room and ultimately came upon a cubbyhole containing a clear plastic bag of what appeared to be cannabis. *Id.* The officer left the narcotics where they were, completed his search for intruders and returned to his squad car to call for backup to secure the residence while he went to obtain a warrant. *Id.* Backup arrived about 50 minutes later and the officer then contacted an assistant State's Attorney who advised him to reenter the premises and seize the drugs without a warrant, which he proceeded to do. *Id.*

¶ 17　　The trial court granted defendant's motion to suppress, finding that although the officer's initial entry was with the homeowner's consent, he exceeded the scope of that consent when he reentered the home. *Id.* at 992. Reversing the trial court, the *Logsdon* court rejected the notion that there were two separate searches of defendant's home: "[W]e are not faced with two searches, but rather with one continuous search. A brief interruption or a temporary suspension of a search does not transform one continuous search into two separate searches. [Citations.]." *Id.* The court further observed:

　　　"The record reveals [the officer] never abandoned his investigation, relinquished control over the defendant's house, or indicated an intent not to seize the marijuana. He only briefly interrupted his search to call for backup and to reach the assistant State's Attorney." *Id.* at 992-93.

¶ 18　　Here, Vallow entered Franklin's room for a nondrug-related purpose and, during the course of his consensual search, observed suspect narcotics in plain view. At that point, Vallow had probable cause to arrest Franklin for possession of those narcotics as Franklin had previously informed Vallow that the room was rented in his name. And Franklin would have been arrested had Lathan not unexpectedly fled the room. The officers did not leave the room

- 4 -

because they had completed their search and ran out only to pursue a fleeing suspect. When Vallow returned minutes later, the door was still propped open and Franklin, upon seeing Vallow, did not register any objection to Vallow's return or ask him to leave. Under these circumstances, we find that there was one continuous consensual search and that Vallow could properly reenter the room to effect Franklin's arrest.

¶ 19    The authorities Franklin cites on the issue of consent to multiple searches by police are distinguishable on their facts. See *People v. Plante*, 371 Ill. App. 3d 264, 268-69 (2007) (holding there was no consent where the police officer had made *three* entries into the defendant's home, each time through a closed door, defendant voiced an objection to the third entry, and the officer made a physical gesture for the defendant to move aside); *People v. Jackson*, 57 Ill. App. 3d 720, 723 (1978) (holding there was no consent for police officers' second entry into room where door to room was locked in between first and second searches). Under the circumstances here, where (i) the officers' entry into the room was indisputably consensual; (ii) the officers had recovered narcotics in plain view giving them probable cause to arrest, at a minimum, the person in whose name the room was rented; (iii) the officers' departure from the room was occasioned not by completion of the search but by the need to pursue a fleeing suspect; (iv) the door to the room remained open when one officer returned minutes later; and (v) the room's occupant expressed no objection to the officer's reentry, we find that Vallow's reentry to the room was authorized by consent.

¶ 20    Franklin also contends that even if Vallow could properly reenter the motel room pursuant to his original consent, Vallow's warrantless search of other areas of the room and, in particular, the area above the bathroom ceiling, was not justified. Specifically, Franklin contends that Vallow's search of the bathroom ceiling, which exceeded the scope of Franklin's consent to enter the room to find "DB," was not otherwise justified either as a search incident to Franklin's arrest or by exigent circumstances. On this point, we agree with Franklin.

¶ 21    Franklin's consent to Vallow and Hankins' entry into his motel room was predicated on the officers' stated purpose to locate Lathan, a suspect in a theft. Once inside, the narcotics in plain view gave rise to probable cause to arrest Franklin, in addition to Lathan. But, absent other circumstances, the probable cause to arrest Franklin did not translate into the ability to conduct a warrantless search of the entire room, including the bathroom. Thus, in order to justify Vallow's search of the area above the bathroom ceiling tiles, it was incumbent on the State, once Franklin demonstrated that the weapons were recovered in a warrantless search, to demonstrate that the search was properly incident to Franklin's arrest or that exigent circumstances existed. See *People v. Kowalski*, 2011 IL App (2d) 100237, ¶ 9 (in motion to suppress, defendant bears initial burden to show search was conducted without a warrant, then burden shifts to State to present evidence of exception to warrant requirement).

¶ 22    We first consider whether Vallow's search above the bathroom ceiling tiles was properly incident to Franklin's arrest. *Chimel v. California*, 395 U.S. 752 (1969), addresses the parameters of a warrantless search incident to a lawful arrest. In *Chimel*, officers arrived at defendant's home with a warrant authorizing his arrest for the burglary of a coin shop. Defendant was not home when the officers arrived, and his wife admitted them to the home. After defendant returned from work, the officers served him with the arrest warrant and asked permission to "look around." Although defendant objected, the officers informed him that based on his lawful arrest, they would search over his objection. Items recovered in the search were later admitted into evidence against defendant. *Id.* at 753-54.

¶ 23    After reviewing the fluid history of the law justifying a search incident to an arrest, the Supreme Court articulated the proper scope of such a warrantless search:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. ***
>
> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." *Id.* at 762-63.

Ultimately, the Court concluded that "[t]he only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other." *Id.* at 766. *Chimel* thus determined that the search of defendant's home violated the fourth amendment and that his motion to suppress evidence recovered during that search should have been granted.

¶ 24    Following *Chimel*, Illinois courts have likewise addressed the permissible scope of a warrantless search incident to an arrest. Thus, our supreme court has concluded that a search under a bed occupied by the arrestee was proper as the area was under the arrestee's immediate control (*People v. Doss*, 44 Ill. 2d 541, 547-48 (1970)), and this court determined that searching a pile of clothes within an arrestee's reach and the drawer of a desk located next to the bed where the defendant was arrested was likewise proper. *People v. Olson*, 198 Ill. App. 3d 675, 684 (1990). The fact that an arrestee is already handcuffed does not necessarily circumscribe a police officer's ability to search the area within the arrestee's immediate control incident to an arrest. *People v. Hoskins*, 101 Ill. 2d 209, 213, 216-17 (1984) (finding search of handcuffed defendant's purse proper as incident to arrest); *People v. Perry*, 47 Ill. 2d 402, 405, 407-08 (1971) (search of half-open drawer into which defendant had reached prior to being handcuffed was valid search incident to arrest).

¶ 25    Applying these principles to this case, it is apparent that Vallow's search of the area above the bathroom ceiling tiles (both after Franklin was handcuffed and sitting on the bed and later when he was secured in Vallow's squad) was not within the permissible scope of a search incident to Franklin's arrest. The bathroom area was separate from the room where Franklin was arrested, and it was not within his immediate reach. The evidence shows that Vallow had to stand on the toilet seat to access the area. When Vallow reentered the motel room and observed Franklin emerging from the bathroom, nothing prevented him from visually examining the bathroom and determining that the ceiling tiles had been disturbed. And while the trial court properly concluded that the changed condition of the ceiling tiles gave Vallow probable cause to believe Franklin had either recently concealed contraband in or retrieved contraband from that location, probable cause, standing alone, did not justify the warrantless search. *Payton v. New York*, 445 U.S. 573, 587-88 (1980); see also *People v. Hassan*, 253 Ill.

App. 3d 558, 567 (1993) ("[N]o amount of probable cause can justify a warrantless search or seizure absent exigent circumstances." (Internal quotation marks omitted.)).

¶ 26    The State contends that even if the search above the ceiling tiles was not justified as incident to Franklin's arrest, exigent circumstances supported the search. Courts have authorized warrantless entries when there is compelling need for prompt action by police and time does not permit the police to obtain a warrant. *People v. Free*, 94 Ill. 2d 378, 395 (1983). In *People v. Williams*, 161 Ill. 2d 1, 26 (1994), our supreme court articulated a number of factors relevant to the determination of whether exigent circumstances exist, which include whether "(1) the crime under investigation was recently committed; (2) there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) a grave offense was involved, particularly a crime of violence; (4) there was reasonable belief that the suspect was armed; (5) the police officers were acting on a clear showing of probable cause; (6) there was a likelihood that the suspect would escape if *** not swiftly apprehended; (7) there was strong reason to believe the suspect was in the premises; and (8) the police entry was made peaceably, albeit nonconsensually."

¶ 27    Because Vallow's entry into the motel room was with Franklin's consent, the only question is whether Vallow's search of the area above the bathroom ceiling tiles was justified by this exception.

¶ 28    In its argument, the State conflates the circumstances existing as of Vallow's first entry into the motel room, *i.e.*, pursuit of a suspect in a recent theft who, according to the victim, was "known to be armed," with the circumstances that existed after Vallow returned to the room. Thus, the State argues that the officers reasonably believed Lathan had recently stolen money from another patron of the motel, was likely armed, behaved erratically when confronted, and ultimately fled after carjacking a vehicle in the parking lot. But by the time Vallow returned to the room, albeit only a few minutes later, only Franklin was present and although Vallow saw Franklin as he emerged from the bathroom, he did not observe him reaching up into the ceiling tiles and, following Franklin's arrest, the area above the ceiling tiles, as noted above, was not within Franklin's immediate reach.

¶ 29    If we hypothesize a scenario where Lathan did not flee the room, the analysis becomes even more clear. If Lathan had not fled, the officers would have been justified in searching both Lathan and Franklin and the area within their immediate reach. This would not have included the bathroom or the area above the ceiling tiles, particularly since, as Vallow testified, the ceiling tiles were in place. Such a search incident to arrest may have resulted in the recovery of the weapons we assume Franklin later attempted to conceal above the bathroom ceiling, but it would not have exceeded the search's permissible scope.

¶ 30    We do not question that Vallow's 41 years' experience as a police officer led him to believe (correctly, as it turns out) that contraband was concealed above the recently disturbed ceiling tiles. But that is just probable cause and because Franklin was already in custody and handcuffed (indeed, he was outside the room locked in Vallow's squad), no exigent circumstances justified the search of the ceiling area without a warrant.

¶ 31                                    CONCLUSION

¶ 32    The weapons recovered from above the bathroom ceiling in Franklin's motel room were the only evidence supporting his UUWF convictions. Given our conclusion that Franklin's motion to suppress that evidence should have been granted, we reverse outright the judgment

of the circuit court of Cook County.

¶ 33          Reversed.