STATE OF NORTH CAROLINA v. KENNETH WAYNE WADDELL

No. 7718SC342

(Filed 5 October 1977)

**Criminal Law § 76.5— confession—conflicting evidence on voir dire—failure to make
   finding of fact—error**

   Where there was conflicting evidence on *voir dire* as to whether defendant
   requested counsel during interrogation, the trial court erred in failing to make a
   specific finding of fact with respect thereto.

APPEAL by defendant from *Rousseau, Judge.* Judgment
entered 9 December 1976 in Superior Court, GUILFORD County.
Heard in the Court of Appeals 22 September 1977.

By bill of indictment proper in form, defendant was charged
with felonious breaking and entering on 16 February 1976. He plead-
ed not guilty, the jury returned a verdict of guilty, and the court
rendered judgment that defendant be imprisoned for the term of
three years in the custody of the Secretary of Correction as a "Com-
mitted Youthful Offender" and be assigned to work under supervi-
sion of the Department of Correction. Defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney
General Robert P. Gruber, for the State.*

*Clark, Wharton, Tanner & Sharp, by Eugene S. Tanner, Jr.,
for the defendant.*

MARTIN, Judge.

Defendant contends the trial court erred in admitting into evidence statements by defendant in the nature of a confession for the reason that "[t]he Court made no specific findings of fact with respect to whether the defendant had requested an attorney prior to termination of the interrogation and before making any confession." In light of the conflict in evidence on *voir dire* relative to this material point, defendant argues not only that a specific finding of fact was required, but also that the absence of such finding of fact renders without support and ineffective the trial court's conclusion that "[defendant's] statement was freely, understandingly and voluntarily given. . . ." We agree.

On the *voir dire* examination conducted by the trial court to determine the admissibility of the confession, evidence for the State discloses that defendant signed a waiver of rights statement in the presence of Officers Farlow and Ballance at 4:30 a.m. on the 16th day of February 1976. Officer C. F. Allen, testifying for the State, stated that he arrived at the police station sometime around 5:00 a.m. and to his knowledge was the first person to interrogate the defendant. Officer Allen further testified:

> "Patrolman Ballance asked me out in the hall, or I went out in the hallway there and I asked him if there were footprints found near the burglary scene and he stated yes, there were, that they were sort of, I guess, a ripple sole affair, I call it. He found—it appears that the footprint was found where the suspects had run from Mrs. Vickory's home. At that point I went back into the interview room and Ballance came in right behind me, and I asked Mr. Waddell—I said, 'Kenneth, let me see your shoes.' He lifted his foot like this and I said, 'un huh.' I said, 'That's the same kind of footprint that was found down there at that crime scene.' At that time he said, 'All right, I'll tell you about it.' He started making a statement how they had been over at his house at 1608 Hook Street, I believe it is, and he—
>
> ". . . I might have spent an hour altogether with Kenneth, and the reason I say that was because I was trying to get things coordinated so that the other defendants could also be interviewed, and at one time or another, I spoke briefly with all of them. While I was talking with Kenneth Waddell, Officer Ballance came into the room about the time I asked Kenneth, 'Let's see your feet, your shoes.' Nobody else came in."

Cross-examination of Officer Allen on *voir dire* produced the following testimony relevant to defendant's alleged request for an attorney before making the confession:

> "I don't recall hearing Mr. Waddell ask anyone that he wanted to make a telephone call to his mother. I don't know that he did not.
>
> "As to whether I know that he did not make one to me, or ask me to make it, I don't recall him asking me. Now, he talked not only to myself but to the uniformed Officer Ballance, Officer Farlow, and I believe Detective Cook and Sergeant Bishop. He could have asked one of them, but I don't recall him asking me.
>
> "I can't testify that he did not ask me, but the best I can recall he did not.
>
> "As to whether I didn't testify that he did not ask me to make a telephone call, the best that I can recall he did not ask me to make a telephone call."

Defendant's evidence on *voir dire* reveals that he signed the waiver of rights statement and "was going to go ahead and talk with [the officers] without a lawyer. . . ." However, defendant also testified as follows:

> ". . . I told them I didn't break in no house so that Officer — I think it was Ballance — him and the detective, they came and took my shoes. They said they found feetprints there at the house and they told me to take my shoes off up there. I took them off and they took them to the evidence room or some-where. Then I asked to use the telephone to call my mother, but he just kept saying that we'll let you use it in a few minutes, and I asked him about three or four times and I never did get to use the telephone that night to call home.
>
> "It was about 5:00 when I asked to use the telephone. As to whether I told them why I wanted to use the telephone, yes, I wanted to get this contact with my mother to try to get me a lawyer. I made the request to the detective right there in the dark suit and to Ballance."

Upon the conclusion of the evidence on *voir dire*, the trial court made the following findings and conclusions:

> "Now, with respect to the confession, after hearing the evidence offered both by the State and the defendant and the

argument of counsel, the Court makes the following finding of fact:

"That Officer Ballance of the Greensboro Police Department went to an interrogation room with Officer Farlow at approximately 4:20 a.m.; that the defendant was in the interrogation room by himself at that time; that Officer Ballance advised the defendant that he had a right to remain silent; that anything he said could be used against him; that he had a right to an attorney; and that if he could not afford one, one would be appointed to represent him; that the defendant acknowledged that he understood these rights and signed a written waiver of these rights wherein he stated that he understood his rights; that he did not want an attorney and he agreed to make a statement; that at that time the defendant was not under the influence, and that no threats or promises were made to him; that thereafter Captain Allen came into the interrogation room about 5:00 a.m.; that he told the defendant that a co-defendant had made a statement and that if he, the defendant, would make a statement, he would also tell the District Attorney that the defendant was cooperative; that the defendant stated that no threats were made to him and stated that he freely and voluntarily made his statement; that no promise was made to the defendant concerning bond; that the defendant did not remember any officer saying that the officer would recommend to the Court anything if the defendant made a statement.

"Based on the foregoing findings of fact, the Court concludes that even though Captain Allen told the defendant he would tell the District Attorney if the defendant was cooperative, the defendant did not understand this and it was not considered by the defendant as a hope of reward or a hope of leniency; that the defendant was fully advised of his Constitutional rights and that his statement was freely, understandingly and voluntarily given without any threat or reward or hope of reward, and, therefore, the defendant's statement is admissible in the trial of this case."

It is well established in this jurisdiction that when the admissibility of an in-custody confession is challenged, the trial judge must conduct a *voir dire* to determine whether defendant has been informed of his right to remain silent and right to counsel as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and whether the confession was in fact voluntarily made. *State v. Jenkins*, 292 N.C. 179, 232 S.E. 2d 648 (1977); *State v.*

*Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976); see *State v. Mills*, 6 N.C. App. 347, 170 S.E. 2d 189 (1969). At the conclusion of the *voir dire*, the trial judge *should* make findings of fact to indicate the basis of his ruling. However, when there is a conflict in the evidence on *voir dire* as to a material fact, the trial judge *must* make appropriate findings in order to resolve the crucial conflicts. *State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977); *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976).

In the instant case, the trial court's findings of fact omit any reference as to whether defendant requested an attorney before making his confession. The existence or nonexistence of such a request is a *material* consideration in determining the admissibility of a confession arising out of in-custody interrogation. In laying down the ground rules for protecting an accused's privilege against self-incrimination and assuring his right to counsel during custodial interrogation, the Supreme Court of the United States in the *Miranda* decision emphasized that if at any time during the questioning the accused states that he wants an attorney, the interrogation must cease until an attorney is present. Thus, defendant's contention, in essence, requires us to ascertain whether he had been denied the assistance of counsel at the time of the interrogation which produced his confession. If during interrogation the defendant made known his desire for counsel to either Officer Allen or Officer Ballance and thereafter Officer Allen continued to interrogate defendant, any incriminating statement thus elicited cannot be received in evidence against him.

Officer Allen testified on *voir dire* that he could not recall whether defendant had asked to use the telephone to call his mother for the purpose of contacting an attorney. No testimony was elicited from Officer Ballance on *voir dire* relative to this matter; however, during the trial, Officer Ballance did state that while he was present in the interrogation room defendant made no request to call his mother. Defendant, in his testimony, was unequivocal in his assertion that he repeatedly requested to use the telephone to contact his mother for the purpose of obtaining counsel and was in each instance denied. He stated specifically that his requests were directed to "the detective right there in the dark suit [referring to Officer Allen] and to Ballance." In light of this material conflict in the evidence on *voir dire*, we find that the failure of the trial judge to make a finding of fact with respect thereto was error. *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968); see *State v. Williford*, 275 N.C. 575, 169 S.E. 2d 851 (1969).

Accordingly, we hold that in the absence of a finding as to whether defendant requested counsel during interrogation and a ruling thereon, the admissibility of any confession the defendant may have made must be determined at a new trial.

New trial.

Judges PARKER and ARNOLD concur.