STATE OF NORTH CAROLINA v. WILLIE WILLIAM STEPTOE

No. 8

(Filed 16 March 1979)

1. **Criminal Law § 75.5— statement by defendant—warning required for admissibility**

    As a constitutional prerequisite to the admissibility of statements obtained from an accused during custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, requires that the suspect be advised in unequivocal terms (1) that he has a right to remain silent; (2) that anything he says can and will be used against him in court; (3) that he has a right to consult with a lawyer and to have a lawyer present during interrogation; and (4) that if he is indigent and unable to employ a lawyer, counsel will be appointed to represent him.

2. **Constitutional Law § 49; Criminal Law § 75.10— right to counsel—waiver**

    After having been advised of his rights, an accused may waive the privilege against self-incrimination provided the waiver is made voluntarily, knowingly and intelligently.

3. **Constitutional Law § 40— right to counsel—assertion of right during interrogation—cessation of interrogation required**

    If an accused indicates in any manner and at any stage of the interrogation process that he wishes to consult with an attorney before speaking, there can be no questioning.

4. **Constitutional Law § 49— right to counsel—waiver not made voluntarily and understandingly**

    Evidence was insufficient to support the trial court's finding that defendant was fully informed of his rights and knowingly, understandingly and voluntarily waived his right to counsel where the evidence tended to show that defendant wanted a lawyer, did not know a lawyer to call and wanted the court to appoint one, refused to sign what an officer had written down, was told that appointment was done through the court, that neither the officer nor the sheriff's department could appoint him a lawyer, that he would be brought before a judge and if the judge saw fit to appoint him a lawyer he would be assigned one, and only then did defendant agree to talk without benefit of counsel.

DEFENDANT appeals from unpublished decision of the Court of Appeals, 38 N.C. App. 243, 247 S.E. 2d 737 (1978), upholding judgment of *Webb, J.,* entered 29 September 1977, NEW HANOVER Superior Court. This case was docketed and argued as No. 121 at the Fall Term 1978.

Defendant was tried upon a bill of indictment charging him with the armed robbery of Mrs. Jean Prince, manager of the Zip Mart located at 653 Castle Hayne Road in New Hanover County.

The State's evidence tends to show that a black male, later identified as Joseph Bethea, entered the Zip Mart at 653 Castle Hayne Road about 2 p.m. on 30 June 1977, approached the manager Jean Prince and demanded money. The robber was wearing a stocking over his face and a paper bag over his hand. The manager gave him in excess of $100 cash and he fled the scene.

Mrs. Betty Herman lived one-fourth mile from the Zip Mart. At approximately 2 p.m. she saw a blue two-door Ford pull into her front yard with two black men in it who said they were out of gas. Mrs. Herman obtained a can and walked with the driver to the gas station across the road where he purchased gas and returned to the car. Upon their return, the second man in the car had left on foot and was walking down the street. The driver poured the gas in his tank, got in his car and drove away.

The New Hanover County Sheriff's Department received a call that a robbery had occurred at the Zip Mart at 2:15 p.m., and Deputy Sheriff Guy arrived on the scene at 2:20 p.m. Mrs. Prince told him about the robbery and furnished a description of the robber. Within a few minutes Officer Guy received a call by radio from his supervisor demanding immediate back-up at the 7-Eleven Store about one block south of the Zip Mart. He drove to the 7-Eleven Store immediately and observed a black male walking from the front door and getting into a two-door late model blue Ford Torino. There was no one else in the car. The man who entered the car was defendant Willie Steptoe. He was arrested and Detective Causey took him to the sheriff's office in Wilmington.

Approximately two hours later Detective Causey gave defendant the *Miranda* warnings, interrogated him, and obtained the following incriminating statement:

"He told me that he had borrowed a car, this car he was in from a friend; that he was driving towards Castle Hayne and picked up a subject he did not know, thumbing and that they had gone and stopped and this subject had left and went into the store and told him to wait there. He said at that time he did not know what he was doing. I questioned him further about this and about this being the truth. I asked him did he know the subject. He said he did not. After

talking to Steptoe further, he told me that Bethea was the other subject with him and that he, Bethea, had borrowed the car from a girl friend by the name of Mary Patrick and that he was driving and Steptoe was riding; that they had went to the Wrightsboro area and parked in this yard, the yard on Sheridan Drive and Bethea told Steptoe to wait and to drive and he would be back in a minute. He told me that they had gone to this area to see what they could get into. I asked him about what he meant by getting into something. He avoided my question, saying just to see what they could get into. He would not write me a statement. After this he became evasive, and would not answer my questions. I stopped questioning him and placed him in jail."

At a pretrial voir dire hearing on defendant's motion to suppress his incriminating statement, Detective S. A. Causey was the only witness examined. He testified in pertinent part as follows:

"I contacted Mr. Steptoe the first time at the 7-11 Store about two blocks away from the Zip Mart that was robbed and talked briefly with him there. I then learned from a witness that the subject that was originally in the store that committed the actual robbery was believed to have gotten in and out of the car Mr. Steptoe was driving at this time. I again talked with Mr. Steptoe . . . at the Sheriff's office at approximately 4:34 the same day. . . . After first advising him of his rights, I questioned him. . . . I seated Mr. Steptoe in the interview room and at 4:34 I started advising him of his rights. I used the standard rights form used by our department. I have it right here.

I told Mr. Steptoe to listen to my statements and if he understood to answer yes or no, that I was advising him of his constitutional rights against self-incrimination. At that time I placed his name and address he gave me, age, the date and the time on the top of the sheet. I put June 30, 1977 — 4:34 P.M. At that time I asked if he understood that he must understand his rights. He replied 'yes.' I next told him he had the right to remain silent and he said he didn't understand this. I asked him what he did not understand. He again answered that he didn't understand. I read to him, 'Anything you say can and will be used against you as

evidence in a court of law, do you understand this?' He answered no. At that time I asked him did he not understand or was he trying to be difficult to talk to. He indicated that he was trying to be difficult and he said he would answer my questions correctly. I started again at the top and asked him 'Before I ask you any questions you must understand your rights. Do you understand this?' He replied that he did. I read the rest of the rights to him and he replied that he understood all of them. I asked him did he want to call a lawyer at this time and he said yes to this. I showed him the phone and told him to call any lawyer he wanted. He related to me that he did not know a lawyer and wanted the Court to appoint him a lawyer. I advised him this would have to be done through the court and asked him if he would talk to me without a lawyer and he said yes.

. . . I asked him if he could read. He indicated that he could and that he finished the 12th grade in school. This was at 4:41 p.m. I showed him what I had filled out and asked him to read it and sign it which he refused to do. I filled in my name and the time, his sex and age and answered 'yes,' could he read or not. After that I had a conversation with Mr. Steptoe in relation to the armed robbery. . . . I talked with him for about two hours."

On cross-examination, Officer Causey testified:

"After I asked him if he wanted to call a lawyer, I did not ask him to sign because I hadn't finished reading. I had another question to ask about him talking and then I let him read it and look at it and then I asked him to sign it. He didn't want to sign, refused to sign it. I asked him did he want to waive his rights when I asked if he wanted to talk to me. He then told me that he would talk to me and I had already written in 'Refused to Sign' and as I recall, he then said he would sign his name. He printed his name under where I wrote 'Refused to Sign.' He refused and then I asked him would he talk to me without a lawyer and he said he would and then he signed his name. I asked him if he wanted to call a lawyer and he said yes. He said he didn't know one to call and that he wanted the Court to appoint him a lawyer. I told him that would be done through the court, that I could

not appoint him a lawyer; that he would be brought before a Judge and that if the Judge saw fit to appoint him a lawyer that is where his lawyer would come from, not from me or the department. At that point I did not get in touch with a Judge or a court official to try to see that he got a lawyer because at that point I planned to talk to him no further. Then I asked him would he talk to me without a lawyer and he said yes. After he refused to sign the form I asked him one question, that being if he would talk to me without a lawyer and he said yes. I then continued to question him."

Based on Officer Causey's testimony the trial court found as a fact that Officer Causey interviewed defendant on 30 June 1977 and fully advised him "of his right to remain silent, of his right to have an attorney, and of his right to have the State provide an attorney for him if he could not afford one. That the defendant first told Mr. Causey that he would not waive his right to an attorney. That Mr. Causey then stated to the defendant that the court would have to provide an attorney for him and that he could not, that is, Mr. Causey could not do it. Mr. Causey then asked the defendant to talk to him, and the defendant said, 'all right. I'll give you a statement.' That the defendant fully understood his rights, that he knowingly, understandingly and voluntarily waived his right to remain silent and waived his right to have an attorney present at any questioning. The statement that he made to Sid Causey at that time is admissible in evidence. The defendant's motion to suppress is overruled."

Officer Causey was permitted, over objection, to relate defendant's incriminating statement to the jury.

Defendant did not testify and offered no evidence. The jury returned a verdict of guilty as charged, and defendant was sentenced to prison for thirty years. On appeal, the Court of Appeals found no error, and defendant appealed to this Court on constitutional grounds discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by T. Michael Todd, Associate Attorney, for the State.*

*Ernest B. Fullwood, for defendant appellant.*

HUSKINS, Justice.

Defendant challenges the competency of his incriminating statement on the ground that it was obtained in violation of his constitutional rights delineated in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). We first examine the governing principles enunciated in that case.

[1-3]  As a constitutional prerequisite to the admissibility of statements obtained from an accused during custodial interrogation, *Miranda* requires that the suspect be advised in unequivocal terms (1) that he has a right to remain silent; (2) that anything he says can and will be used against him in court; (3) that he has a right to consult with a lawyer and to have a lawyer present during interrogation; and (4) that if he is indigent and unable to employ a lawyer, counsel will be appointed to represent him. After having been so advised, an accused may waive the privilege against self-incrimination these warnings are designed to protect provided the waiver is made *voluntarily, knowingly,* and *intelligently*. ". . . [A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver, will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." *Miranda v. Arizona, supra.* If the accused indicates in any manner and at any stage of the interrogation process that he wishes to consult with an attorney before speaking, there can be no questioning.

The admission of an incriminating statement is rendered incompetent by any circumstance indicating coercion of involuntary action. *State v. Guffey*, 261 N.C. 322, 134 S.E. 2d 619 (1964). The totality of circumstances under which the statement is made should be considered when passing on admissibility. *State v. Chamberlain*, 263 N.C. 406, 139 S.E. 2d 620 (1965). *See State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581 (1968).

[4]  Measured by *Miranda* standards we hold that the findings of fact are not supported by the voir dire testimony of Officer Causey. Rather, the officer's testimony, when fairly considered in light of *Miranda* requirements, shows that defendant (1) wanted a lawyer; (2) did not know a lawyer to call and wanted the court to appoint one; (3) refused to sign what Officer Causey had written

down; (4) was told that appointment of counsel was done through the court, that neither Officer Causey nor the Sheriff's Department could appoint him a lawyer, that he would be brought before a judge and *if the judge saw fit to appoint him a lawyer* he would be assigned one. Defendant was then asked whether he would talk to Officer Causey without a lawyer. Defendant replied that he would, and Officer Causey continued to question him.

The foregoing scenario woefully fails to demonstrate the use of "procedural safeguards effective to secure the privilege against self-incrimination" as mandated by *Miranda*. Instead, it tends to show that Officer Causey, in obvious contradiction to the warnings previously read to defendant from the "standard rights form," discouraged the appointment of counsel by telling defendant he would be brought before a judge and "if the judge saw fit to appoint him a lawyer that is where his lawyer would come from." Only after this statement did defendant agree to talk without benefit of counsel. Essentially, the officer advised defendant of his rights and then quite effectively blocked their assertion by emphasizing the difficulties involved in obtaining them. Thus the officer's testimony on voir dire is insufficient to support the finding that defendant was fully informed of his rights and *knowingly, understandingly and voluntarily* waived his right to counsel. The holding in *Miranda*, as interpreted and applied by this Court in numerous decisions, provides that waiver of the right to counsel during custodial interrogation will not be recognized unless the accused has been fully informed of his constitutional rights and the right to counsel has been voluntarily, knowingly and intelligently waived. *See, e.g., State v. Connley*, 295 N.C. 327, 245 S.E. 2d 663 (1978), *petition for cert. filed*, 47 U.S.L.W. 3351 (U.S. Oct. 6, 1978) (No. 78-583); *State v. Butler*, 295 N.C. 250, 244 S.E. 2d 410, *cert. granted*, 99 S.Ct. 720 (1978); *State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977); *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976); *State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975); *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972); *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971). Unless and until such warnings and waiver "are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda v. Arizona, supra.*

Since the evidence offered on voir dire in this case is insufficient to support the crucial findings, it necessarily follows that

defendant's incriminating statement to Officer Causey was erroneously admitted. This entitles defendant to a new trial because we cannot say that there was no reasonable possibility that the evidence complained of contributed to defendant's conviction so as to render its admission harmless. *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972).

Cases cited and relied on by the Court of Appeals are factually distinguishable. In *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976), defendant stated he would not answer further questions and wanted to consult a lawyer which request was scrupulously honored. Thereafter, defendant reflected upon the incredibility of his original story in light of the evidence against him, decided to change his statement to the officers to make it more plausible, and invited them to listen while he related his revised version. This statement was held to be competent and rightly so.

In *State v. Jones*, 278 N.C. 88, 178 S.E. 2d 820 (1971), defendant stated when arrested that "he would rather not talk about it right now." Nothing indicates that the officers attempted to question him further at that time. Thereafter defendant, after having been fully advised of his constitutional rights, not only freely consented but invited the police officer to resume talks with him. His statement was held to be competent and rightly so.

In *State v. Bishop, et al.*, 272 N.C. 283, 158 S.E. 2d 511 (1968), the evidence on voir dire was to the effect that defendants were informed of their rights prior to interrogation on their first day in custody but made no statements at that time. One defendant expressly declined to talk until he consulted a lawyer. On the following day, after again being informed of their rights, defendants made inculpatory statements to the police. Held: The fact that defendants declined to make any statements in their first interrogation did not render incompetent any subsequent statements made to police officers, it affirmatively appearing that defendants were adequately advised of their constitutional rights at each interrogation and that their statements were in fact freely and understandingly made.

*Michigan v. Mosley*, 423 U.S. 96, 46 L.Ed. 2d 313, 96 S.Ct. 321 (1975), holds that the decision in *Miranda* establishes standards to

protect the constitutional privilege against compulsory self-incrimination during police interrogation but does not establish a requirement that once a person has indicated a desire to remain silent, questioning may be resumed only when counsel is present. *Mosley* recognizes that the *Miranda* rule does not bar a subsequent statement by a defendant who, after having been fully advised of his constitutional rights, freely and voluntarily waives his right to remain silent and his right to counsel and invites the officer to resume talks with him.

For reasons stated, defendant's motion to suppress his incriminating statement should have been allowed. The decision of the Court of Appeals is therefore reversed and defendant is awarded a

New trial.