STATE OF NORTH CAROLINA v. TROY NEWTON OWEN

No. 9229SC1065

(Filed 3 August 1993)

1. **Criminal Law § 648 (NCI4th)— motion to dismiss at close of State's evidence — evidence introduced by defendant — failure to renew motion — waiver of right to appeal issue**

    Where defendant introduced evidence after the State rested its case, he waived his motion for dismissal of the first-degree burglary charge made at the close of the State's evidence, and defendant's failure to renew his motion to dismiss at the close of all evidence constituted waiver of his right to appeal this issue. N.C. R. App. P. 10(b)(3).

    **Am Jur 2d, Appeal and Error §§ 545 et seq.**

2. **Evidence and Witnesses § 1274 (NCI4th)— waiver of rights — voluntariness — understanding — sufficiency of evidence**

    Evidence was sufficient to support the trial court's finding that defendant's waiver of his rights was freely, voluntarily, and understandingly made where the evidence tended to show that defendant indicated that he had read the waiver of rights; a detective in the sheriff's department read the waiver to defendant; defendant twice indicated that he understood it; there was no indication that defendant was confused about his rights or that he was under the influence of any drugs or alcohol; and the detective indicated that, though defendant appeared nervous, he was also responsive and able to communicate. Furthermore, though defendant had been hospitalized numerous times for mental problems and had been

diagnosed as schizophrenic prior to the incidents which gave rise to these charges, there was not enough evidence to dispel the overall impression that defendant was alert, understood his rights, and had the mental capacity to waive them.

**Am Jur 2d, Criminal Law §§ 633, 638.**

3. **Assault and Battery § 100 (NCI4th) — self-defense — defendant at fault in bringing on affray — no instruction required**

Defendant was not entitled to an instruction on self-defense when he entered the victims' house and bedroom without permission and thus was at fault in starting the conflict, and defendant did not attempt to withdraw from the fight with the victim or attempt to communicate his desire to withdraw.

**Am Jur 2d, Assault and Battery §§ 69 et seq.**

4. **Assault and Battery § 116 (NCI4th) — assault with deadly weapon with intent to kill — sufficiency of evidence of intent to kill**

In a prosecution of defendant for assault with a deadly weapon with intent to kill, the trial court did not err in failing to submit to the jury the lesser-included offense of assault with a deadly weapon, since defendant was not entitled to the instruction on the lesser offense if the element of intent to kill was shown by the evidence; in this case, it was uncontroverted that defendant took a knife into the victims' house, threw one victim to the floor and held the knife to his throat; defendant threatened to kill the victim; and the knife was removed from the victim's throat only when the victim grabbed it and broke the blade.

**Am Jur 2d, Assault and Battery §§ 48 et seq.**

5. **Burglary and Unlawful Breakings § 164 (NCI4th) — first-degree burglary — larceny as underlying felony — insufficiency of evidence**

In a prosecution of defendant for first-degree burglary based on the underlying crime of larceny, the trial court erred in refusing to submit to the jury the lesser included offense of misdemeanor breaking and entering, since there was substantial evidence in the record to support defendant's contention that he did not have the intent to commit larceny when he broke and entered the premises, but instead broke and entered

with the intent to retrieve his shotgun which he had earlier seen in the victims' house.

**Am Jur 2d, Burglary §§ 44 et seq.**

Appeal by defendant from judgments entered 29 May 1992 in Transylvania County Superior Court by Judge Zoro J. Guice, Jr. Heard in the Court of Appeals 7 July 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Ramsey, Hill, Smart, Ramsey & Pratt, P.A., by Michael K. Pratt, and Richard N. Adams, for defendant-appellant.*

GREENE, Judge.

Troy Newton Owen (defendant) appeals from judgments and commitments, following jury verdicts, to terms of life imprisonment for first-degree burglary pursuant to N.C.G.S. § 14-51 and ten years imprisonment for assault with a deadly weapon with intent to kill pursuant to N.C.G.S. § 14-32.

Defendant was indicted for first-degree burglary based on the underlying crime of larceny, and assault with a deadly weapon with intent to kill inflicting serious injury. The State's evidence tends to show that Kenneth McCall (Kenneth) and Angela McCall (Angela), husband and wife (the McCalls), were friends of defendant and defendant had visited them at their house on numerous occasions. Defendant entered the rear door of the McCalls' house during the early morning hours of 1 October 1991, while it was still dark. Prior to the time the McCalls retired on the previous evening, all of the doors and windows of the house were locked, with the exception of the rear door, which was closed. The McCalls had not given anyone permission to enter their house that night.

After defendant entered the house, Angela heard a noise and awakened Kenneth. Kenneth got out of bed and came face-to-face with defendant, whose voice Kenneth recognized when defendant said "I want my shotgun." Defendant began pushing and wrestling with Kenneth, and the altercation moved from the bedroom into the hallway and finally into the living room. Eventually, defendant subdued Kenneth and held him face down on the living room floor with a knife to his throat. Angela then emerged from the bedroom, and upon seeing her husband with the knife at his throat, moved

toward a gun cabinet in the living room. Defendant then told Kenneth "if she gits [sic] the gun, you're dead." Angela then ran out of the house seeking help. At that point Kenneth grabbed the knife, which was still pressed to his throat, and in his attempt to push the knife away, broke the blade. Kenneth's hand was cut when he grabbed the knife. Defendant continued to hold Kenneth down and pull his hair for several minutes afterward. Meanwhile, Angela had sought help from J. B. Owen (Owen). When Owen and Angela entered the house, defendant released Kenneth, ran to his car and left. After defendant left, Kenneth discovered that items in the pockets of his pants, which he had left on the living room couch before going to bed the previous evening, were on the living room floor. Nothing was taken from the house.

Later in the day, after warrants for defendant's arrest were issued, defendant was brought to the office of Transylvania County Detective Keith Fisher (Fisher). Prior to questioning defendant, Fisher gave him a copy of the Transylvania County Sheriff's Department Interrogation Rights Waiver form. Fisher testified that defendant appeared calm, had no odor of alcohol about his person, and was able to communicate with Fisher "quite well." Defendant read the waiver form, and Fisher then read the form to defendant and explained it to him. Initially, Fisher felt that "[defendant] did not understand the Waiver portion of the rights and asked me to read and explain that to him again." Subsequently, defendant "indicated that he understood his rights and the Wiaver [sic] and signed the Rights Waiver." The State moved to play the taped interview for the jury.

The trial court conducted a voir dire to determine the admissibility of the tape. Examination of Fisher revealed that Fisher explained "either all or portions of" the waiver to the defendant twice, and that, although defendant appeared nervous, "he was normal. He was responsive, polite." The trial court found that defendant was properly advised of his rights and that he "freely, voluntarily and understandingly waived those rights" and concluded that the taped interview was admissible.

On the tape defendant stated that he drove to the McCalls' house, and upon arriving, took a knife from his vehicle and placed it in his back pocket. Defendant stated that the McCalls did not invite him in, but he entered a rear door anyway and called Kenneth's name several times. When Kenneth awakened and jumped out of

bed, he was wearing his pants. Defendant asked Kenneth "where's my shotgun?" Kenneth "started for" a gun, and defendant and Kenneth scuffled on the living room floor, where defendant "got him down" but did not place the knife to Kenneth's throat. Defendant did not pull the knife out until "[Angela] started for the gun, then I come out and pulled [the knife]." Defendant told Kenneth "if she gets a gun, you're dead." When asked why he entered the McCalls' house, defendant stated "[t]o git [sic] my shotgun and ask [Kenneth] what was he doing with it in the first place." During the interview defendant made a brief, rambling reference to a hostile confrontation, apparently between himself and Kenneth, which had taken place several months prior to 1 October 1991. At the close of the State's evidence, defendant made a motion to dismiss, which was denied.

Defendant's evidence consisted of his testimony at trial, which was substantially the same as his statement given to Fisher, but also included a claim by defendant that he "did not go there intentionally that morning to hurt [Kenneth]. I just wanted my shotgun and wondered why it was at his house." Defendant had seen the shotgun at the McCalls' house on an earlier visit.

Further testimony from defendant's witnesses indicated that he has had numerous psychiatric hospitalizations, and had been diagnosed as schizophrenic. Defendant failed to renew his motion to dismiss at the end of all evidence.

Defendant's counsel requested that the jury be instructed on misdemeanor breaking and entering, assault with a deadly weapon, and self-defense. These requests were denied. The trial court instructed on first-degree burglary, felonious breaking and entering, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon with intent to kill. The jury returned verdicts of guilty of first-degree burglary and assault with a deadly weapon with intent to kill.

---

The issues presented are whether (I) defendant has waived his right to assert the trial court's denial of his motion to dismiss the charge of first-degree burglary on appeal; (II) defendant's waiver of his right against self-incrimination was effective; (III) the trial court erred in failing to instruct the jury on self-defense; and (IV) the trial court erred in failing to submit to the jury the issues

of (A) assault with a deadly weapon and (B) misdemeanor breaking and entering.

I

[1] Defendant first argues that the trial court erred in failing to grant his motion to dismiss the charge of first-degree burglary made at the close of the State's evidence, as the State had not proven two of the necessary elements of first-degree burglary; first, that the breaking and entering alleged occurred at night; and, second, that defendant intended to commit a felony or larceny when he entered the McCalls' house. Defendant, however, introduced evidence after the State rested its case, thereby waiving his motion for dismissal. N.C. R. App. P. 10(b)(3) (1993). "Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal." *Id.* Defendant may preserve his right to appeal after such waiver by making a motion to dismiss at the close of all evidence, *id.*, but defendant failed to do so, and accordingly, defendant's right to appellate review on this issue is waived.

II

Defendant next contends that the trial court erred in admitting the incriminating statements in defendant's taped interview with Fisher into evidence because defendant indicated that he did not understand the waiver of his constitutional right against self-incrimination, and, in the alternative, that defendant's mental condition was such that he could not voluntarily consent to waive his rights.

[2] After having been advised of his constitutional rights, an accused may waive them if the waiver is voluntarily, knowingly, and intelligently made. *State v. Steptoe*, 296 N.C. 711, 716, 252 S.E.2d 707, 710 (1979). When the admissibility of statements made pursuant to such a waiver is questioned, the trial court must conduct a voir dire hearing to determine whether the procedural safeguards required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), have been met. *See State v. Waddell*, 34 N.C. App. 188, 191, 237 S.E.2d 558, 560-61 (1977). At the conclusion of the voir dire, the trial court should make findings of fact in support of its ruling. *State v. Wade*, 55 N.C. App. 258, 259, 284 S.E.2d 758, 759-60 (1981). The trial court's findings "will not

be disturbed on appeal if there is any competent evidence [in the record] to support them." *Id.* at 260, 284 S.E.2d at 760.

The trial court conducted a voir dire, and found that defendant's waiver of his rights was freely, voluntarily, and understandingly made. There is ample evidence in the record to support this finding. Although it is true that Fisher did make a statement that he initially had a concern as to whether defendant understood the waiver, Fisher indicated that he explained the waiver to defendant a second time, and that he was then satisfied that defendant understood it. A review of the taped interview reveals that defendant indicated that he had read the waiver, that Fisher also read the waiver to defendant, and that defendant twice indicated that he understood it. There was no indication that defendant was confused about his rights or that he was under the influence of any drugs or alcohol. Although Fisher testified that defendant appeared nervous, he also indicated that defendant was responsive and able to communicate. This evidence amply supports the trial court's findings.

Defendant further contends that his mental state was such that an effective waiver of his rights was impossible. The record reveals that defendant had been hospitalized numerous times for mental problems, and that he had been diagnosed as schizophrenic prior to the incidents which gave rise to the charges. Evidence that a defendant is mentally disturbed is pertinent to a determination of whether a defendant's waiver is effective, but "[p]ast indicia of mental instability are not necessarily dispositive on this issue." *State v. Vickers*, 306 N.C. 90, 97, 291 S.E.2d 599, 604 (1982) (citation omitted), *overruled on other grounds, State v. Barnes*, 333 N.C. 666, 430 S.E.2d 223 (1993). Rather, the defendant's condition at the time the waiver was made will be considered. *See id.*

A review of defendant's statement to Fisher reveals that he was able to understand and answer questions, appeared calm, and that, for the most part, defendant seemed lucid. Defendant was able to ask questions when he did not understand the inquiries made by Fisher. Defendant points to a short passage in the statement in which defendant appears to ramble about an incident which occurred several months prior to the incident which led to the charges against defendant. While defendant is correct in stating that this portion of the statement indicates some confusion on defendant's part, it is not enough to dispel the overall impression

that defendant was alert, understood his rights and had the mental capacity to waive them.

Accordingly, the trial court's finding of fact that defendant voluntarily, knowingly, and intelligently waived his rights is supported by competent evidence in the record, and that finding will not be disturbed.

## III

[3] Defendant next argues that the trial court erred in refusing to give his requested jury instruction on self-defense. Defendant seeks a self-defense instruction based on his own testimony that, after he had entered the McCalls' house armed with a knife and without the McCalls' permission, Kenneth, upon seeing the defendant in his bedroom, "was tryin' [sic] to go for his gun . . . [and] I throwed [sic] him down" and put the knife to his throat. Defendant testified that he did this because "I didn[']t want [Kenneth] to hurt me." The trial court must instruct the jury on all essential features of a case, and where there exists evidence that the defendant acted in self-defense, "he is entitled to have this evidence considered by the jury under proper instruction from the court." *State v. Marsh*, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977) (citations omitted). Generally, one who is at fault in starting a confrontation is not entitled to a self-defense instruction. *Id.* Thus, one who "voluntarily, that is aggressively and willingly, [without legal provocation or excuse,] enters into a fight" will not be afforded an instruction on self-defense "unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so." *Id.* (citations omitted).

Defendant admits that he entered the McCalls' house and bedroom without permission. As such, defendant was at fault in starting the conflict. *See State v. Spruill*, 225 N.C. 356, 357, 34 S.E.2d 142, 143 (1945) (person has substantive right to evict trespasser from his home). Upon Kenneth's discovery of defendant, defendant "aggressively and willingly . . . enter[ed] into a fight" with Kenneth. Defendant did not attempt to withdraw from the fight, nor did he attempt to communicate his desire to withdraw. Accordingly, defendant was not entitled to an instruction on self-defense.

IV

Defendant next argues that he was entitled to a jury instruction on the offenses of misdemeanor assault with a deadly weapon and misdemeanor breaking and entering.

The trial court is required to give instructions on other possible verdicts if (1) those charges for which the instruction is sought are lesser included offenses of the charge for which defendant was indicted, *see State v. Riera*, 276 N.C. 361, 368, 172 S.E.2d 535, 540 (1970); and (2) any evidence is presented which would permit the jury to convict the defendant of the lesser offense. *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). The presence or absence of such evidence is the factor which determines whether the instruction must be given. *State v. Harrington*, 95 N.C. App. 187, 189, 381 S.E.2d 808, 809 (1989). Error in the failure to submit lesser offenses to the jury is not cured when the defendant is convicted of the greater offense, as it can never be known if the jury would have found the defendant guilty of the lesser offense if given the opportunity. *Id.*

A

[4] Assault with a deadly weapon, a misdemeanor punishable by not more than two years imprisonment, is a lesser included offense of the charge under which defendant was indicted, assault with a deadly weapon with intent to kill inflicting serious injury. *State v. Weaver*, 264 N.C. 681, 683, 142 S.E.2d 633, 635 (1965); N.C.G.S. § 14-33 (Supp. 1992); N.C.G.S. § 14-32 (1986). Accordingly, if there was any evidence from which the jury could find defendant guilty of assault with a deadly weapon, it was error for the trial court to fail to submit that offense to the jury.

A person will not be found guilty of assault with a deadly weapon if "his conduct is covered under some other provision of law providing greater punishment" for the assault. N.C.G.S. § 14-33. Assault with a deadly weapon with intent to kill pursuant to N.C.G.S. § 14-32(c) is one such provision of law which provides a greater punishment for assault, in that it is punishable by imprisonment of up to ten years. N.C.G.S. § 14-32(c) (1986); N.C.G.S. § 14-1.1 (1986). Thus, if the additional element of intent to kill is shown by the evidence, defendant was not entitled to the instruction on the lesser offense.

"Intent to kill is a mental attitude which must normally be proven by circumstantial evidence." *Harrington*, 95 N.C. App. at 189, 318 S.E.2d at 809 (citation omitted). Such "intent may be inferred from the nature of the assault, the manner in which it is made, the conduct of the parties, and other relevant circumstances." *State v. Revels*, 227 N.C. 34, 36, 40 S.E.2d 474, 475 (1946) (citations omitted).

In this case, it is uncontroverted that defendant took a knife into the McCalls' house, that he threw Kenneth to the floor and held the knife to his throat, that he threatened to kill Kenneth, and that the knife was removed from Kenneth's throat only when Kenneth grabbed it and broke the blade. The only evidence which would negate the intent to kill is the defendant's denial that he would have killed Kenneth. Therefore, on this record, we find no error in the trial court's refusal to submit the requested instruction.

B

[5] The crime of burglary exists when there is a breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony therein. *State v. Williams*, 314 N.C. 337, 355, 333 S.E.2d 708, 720 (1985). The felonious intent proven must be the felonious intent alleged in the indictment. *State v. Wilson*, 293 N.C. 47, 53-54, 235 S.E.2d 219, 223 (1977). In prosecutions for burglary when larceny is alleged as the underlying offense, "larceny shall be deemed a felony." N.C.G.S. § 14-51 (1986). The lesser included offense of misdemeanor breaking and entering must be submitted to the jury if there is substantial evidence that the defendant broke and entered for some non-felonious reason other than that alleged in the indictment. *See State v. Patton*, 80 N.C. App. 302, 305-06, 341 S.E.2d 744, 746-47 (1986).

In this case, the indictment alleges larceny as the felony underlying the charge of burglary. The defendant's evidence supports a contrary view of why he broke and entered the premises; specifically, that he did not have the intent to commit larceny, but instead broke and entered with the intent to retrieve his shotgun which he had earlier seen in the McCalls' house. There is substantial evidence in the record to support defendant's position. The McCalls testified that defendant had been a visitor in their house before, and thus could have seen the shotgun, and that as soon as they encountered defendant in their house on the night in question, he began to shout that he wanted his shotgun. Defendant testified

that his only purpose for entering the house was to retrieve the shotgun. Thus the trial court erred in refusing to submit to the jury the lesser included offense of misdemeanor breaking and entering and defendant is entitled to a new trial on the burglary charge.

In so holding, we reject the State's argument that there is "uncontradicted" evidence that defendant did have the intent to commit larceny when he entered the house. This evidence consists of Kenneth's testimony that he had left his pants on the couch prior to retiring the evening that defendant entered the house, and after the defendant left, Kenneth found that the contents of his pants were "dumped out into the floor." This evidence is not uncontradicted, however, in that in his statement given on the day of the incident and his testimony at trial, defendant maintains that Kenneth was wearing his pants during their struggle. In addition, the State admits that the altercation between Kenneth and defendant took place in the living room, and a reasonable juror could believe that the pants were simply thrown about in that struggle and the contents thereby thrown on the floor.

No error—assault with a deadly weapon with intent to kill.

New trial—first-degree burglary.

Judges EAGLES and LEWIS concur.