STATE OF NORTH CAROLINA v. RODNEY SCOTT MERRITT

No. 9415SC455

(Filed 21 November 1995)

1. **Burglary and Unlawful Breakings § 140 (NCI4th)— burglary at sorority house—director's apartment and main house as one dwelling—court's expression of opinion—error not prejudicial**

   The trial court's instruction constituted an indirect statement that the apartment of the victim, who was the resident director of a sorority house, and the common areas of the sorority house constituted a single "dwelling house" for purposes of application of the burglary statute, and such statement violated N.C.G.S. § 15A-1232 by expressing an opinion as to the existence of a material fact; however, because the common areas of the sorority house, appurtenant to the victim's apartment, were within the curtilage and a portion of the victim's "dwelling house" for purposes of the burglary statute, the trial court's erroneous expression of opinion was non-prejudicial.

   **Am Jur 2d, Burglary §§ 67 et seq.**

**2. Burglary and Unlawful Breakings § 162 (NCI4th)— residence occupied—failure to instruct on second-degree burglary—no error**

The trial court did not err in refusing to instruct the jury on the lesser included offense of second-degree burglary when the evidence was uncontradicted that the house was actually occupied by the victims at the time of the breaking and entering.

**Am Jur 2d, Burglary § 69.**

**3. Criminal Law § 793 (NCI4th)— instruction on acting in concert—failure to include presence at scene—no plain error**

The trial court did not commit plain error in its instruction to the jury on acting in concert by failing to include the element of presence at the scene where there was substantial evidence of defendant's actual and constructive presence at the scene.

**Am Jur 2d, Trial §§ 723 et seq.**

Appeal by defendant from judgment entered 19 January 1994 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 24 January 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General, David N. Kirkman, for the State.*

*Assistant Appellate Defender, Charlesena Elliott Walker, for defendant-appellant.*

JOHN, Judge.

Defendant was convicted of first degree burglary in violation of N.C. Gen Stat. § 14-51 (1993). He contends the trial court erred in various aspects of its jury charge. We disagree.

The State's evidence tended to show the following: On 2 January 1993, Laura Long (Long) was employed as house director of the Kappa Kappa Gamma sorority house located at 302 Pittsboro Street in Chapel Hill, North Carolina. Twenty-nine (29) female university students reside at the facility during the University of North Carolina's academic year. Long's duties include responsibility for matters such as menu planning, meal service, cleaning and maintenance, as well as budgeting, bookkeeping, and payroll.

As part of her compensation, Long and her husband (Mr. Long) receive use of a private apartment within the sorority house. The apartment occupies two floors and entry is prohibited to other residents; however, Long has free access to all portions of the building.

During Christmas break at the University, the sorority house is closed and none of the students may occupy the building; however, the Longs are permitted to remain in their apartment. The Christmas vacation period relevant to the case *sub judice* took place from 19 December 1992 through 10 January 1993.

On the evening of 2 January 1993, the Longs were upstairs in their apartment when they heard a floorboard creak. The structure is old and floorboards in the Longs' apartment often creak and move when someone walks by the door leading into the main portion of the house. Shortly before the noise, between 10:30 and 11:00 p.m., Mr. Long had "walked the perimeter of the building to check doors, windows and lights" and had ascertained that all were locked and undamaged. After Long telephoned police, the couple heard the sound of footsteps running down the main stairs and through the foyer. Seconds later, the alarm on the fire door in the back of the dining room went off. Long looked out her bathroom window and saw people running across the street. She observed an officer overtake and subdue one of the individuals.

Officer Jack Terry (Terry) testified he arrived at the sorority house in response to the dispatcher's call. As he approached the residence, he noticed a door had been broken into and communicated this observation to other officers en route to the scene. Upon arriving, these officers surrounded the house. After a few moments, they heard a noise and saw two persons running out of the dining room door. Terry identified defendant as one of those individuals, both of whom were apprehended.

Terry further testified that his search of defendant's person uncovered a wallet later identified as belonging to Kristin Hill, a student resident of the sorority house. Terry also stated a disconnected VCR was discovered on the floor between the dining room and the living room, and stereo equipment taken from at least two rooms had been placed at the head of the stairs.

Defendant presented no evidence and was found guilty of first degree burglary. He appeals the court's judgment sentencing him to twenty-five (25) years imprisonment.

STATE v. MERRITT

[120 N.C. App. 732 (1995)]

I.

Defendant first maintains the trial court erred "by instructing the jury that the dwelling would be occupied if the Long's (*sic*) were in their quarters at the time of the unauthorized entry and by refusing to submit the possible verdict of second degree burglary to the jury." We find defendant's arguments unpersuasive.

A.

[1] The indictment herein charged defendant with burglary of "the dwelling house of Tim and Laura Long located at 302 Pittsboro Street, Chapel Hill, North Carolina." Burglary is the breaking and entering of a dwelling house or sleeping apartment of another during the nighttime with intent to commit a felony therein. N.C. Gen. Stat. § 14-51 (1993). Burglary in the first degree occurs if the dwelling is occupied; if unoccupied, the crime is burglary in the second degree. *Id.*

With respect to the element of occupancy, the trial court instructed the jury as follows:

If you find that Mr. and Mrs. Long were in their quarters at the Kappa Kappa Gamma Sorority House at the time of the breaking and entering, then the house would be occupied.

Defendant objected to this portion of the court's instruction and states in his brief that the instruction "was an impermissible assumption that all of the separate living units in the building constituted but one dwelling."

N.C. Gen. Stat. § 15A-1232 (1988) states:

In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence.

This provision establishes three fundamental propositions:

(1) That it is the duty of the judge alone to decide the legal questions presented at the trial, and to instruct the jury as to the law arising on the evidence given in the case; (2) that it is the task of the jury alone to determine the facts of the case from the evidence adduced; and (3) that "no judge, in giving a charge to the petit jury, . . . shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury."

*State v. Canipe*, 240 N.C. 60, 63-64, 81 S.E.2d 173, 176 (1954).

In *State v. Wells*, 290 N.C. 485, 226 S.E.2d 325 (1976), *overruled on other grounds, State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68 (1994), the trial court instructed the jury that " 'the apartment described for you herein located at 2655 Pendleton Drive, Apartment number one, is a sleeping apartment.' " *Id.* at 497, 226 S.E.2d at 333. On appeal, the Supreme Court held the court's affirmative statement violated G.S. § 1-180 (predecessor to G.S. § 15A-1232) by "erroneously invading the province of the jury." *Id.* However, this constituted harmless error on the facts of the case in that all the evidence supported the court's statement. *Id.*

In *State v. Nelson*, 298 N.C. 573, 260 S.E.2d 629 (1979), *cert. denied, Jolly v. North Carolina*, 446 U.S. 929, 64 L. Ed. 2d 282 (1980), the trial court instructed the jury that the motel room which had been broken into was a " 'sleeping apartment' " for purposes of the burglary statute. *Id.* at 596-97, 260 S.E.2d at 646. Relying on *Wells*, the Supreme Court again held "such an affirmative statement constituted an impermissible expression of opinion, or an assumption that a material fact had been proved." *Id.* at 597, 260 S.E.2d at 646. However, the *Nelson* Court also concluded the instruction was harmless error. *Id.*

The challenged instruction of the trial court in the case *sub judice* constituted an indirect statement that the Longs' apartment and the common areas of the sorority house constituted a single "dwelling house" for purposes of application of the burglary statute. Under *Wells* and *Nelson*, the court's statement violated G.S. § 15A-1232 by expressing an opinion as to the existence of a material fact. The issue becomes, therefore, whether the error was prejudicial. N.C. Gen. Stat. § 15A-1443(a) (1988).

The State contends the trial court's statement, if erroneous as an expression of opinion, nonetheless was not prejudicial because it accurately reflected the evidence. The State argues that the sorority house and the Longs' apartment indeed constitute but one "dwelling house" since the common areas of house traversed by the burglars lay within the "curtilage" of the Longs' quarters.

"There may be several dwelling units in a single structure, as the rooms of an inn, hotel, or lodging house. In such case, each room is regarded as the 'dwelling house' of its respective occupant." Charles E. Torcia, *Wharton's Criminal Law* § 335, at 208 (14th ed. 1980).

Thus, defendant's contention is accurate to the extent that, if entered, the rooms assigned to each sorority member as well as the quarters solely occupied by the Longs would properly be considered individual dwelling houses for purposes of our burglary statute.

However,

[t]he term 'dwelling house' includes within it not only the house in which the owner or renter and his family, or any member of it, may live and sleep, but all other houses appurtenant thereto, and used as part and parcel thereof, . . . provided they are within the curtilage, or are adjacent or very near to the dwelling-house.

*State v. Green*, 305 N.C. 463, 472, 290 S.E.2d 625, 631 (1982) (citing *State v. Jake*, 60 N.C. 471, 472 (1864)). "The curtilage is the land around a dwelling house upon which those outbuildings lie that are 'commonly used with the dwelling house.' " *State v. Fields*, 315 N.C. 191, 194, 337 S.E.2d 518, 520 (1985) (quoting *State v. Twitty*, 2 N.C. 102 (1794)). In determining whether a building is within the curtilage of the dwelling house, "two themes consistently emerge: the function of the building and its proximity to the dwelling house." *Id.*

First, "if a structure's use 'contributes materially to the comfort and convenience of habitation in the dwelling house,' then it will be considered part of the dwelling for purposes of the burglary statute." *Stewart v. Commonwealth*, 793 S.W.2d 859, 860 (199) (quoting C.S. Powell, Annotation, *Burglary: outbuildings or the like as part of "dwelling house,"* 43 A.L.R.2d 831, 838 (1955).

[T]he law throws her mantle around the dwelling of man, because it is the place of his *repose*, and protects, not only the house in which he sleeps, but also all the other appurtenances thereto, as parcel or parts thereof, from meditated harm. Thus the kitchen, the laundry, the meat or smoke-house and the dairy are within its protection, for they are all used as parts of one whole, each contributing, in its way, to the comfort or convenience of the place, as a mansion or dwelling. They are used with that view, and that alone, and it may be admitted that all houses, contiguous to the dwelling, are, *prima facie*, of that description. But when it is proved that they are used for other purposes, as for labor, as a workshop—for vending goods, as a store-house, this destroys the presumption. It then appears that they are there for purposes unconnected with the actual dwelling-house, and do not render it more comfortable or convenient as a dwelling; in short, that they

are not parcel or part thereof, but are used for other and distinct purposes. The house, as a dwelling, is equally as comfortable and convenient without as with them. Their contiguity to the dwelling may afford convenience or comfort to the occupant as a mechanic, or laborer, or shop-keeper, but none to him as a house-keeper.

*State v. Jenkins*, 50 N.C. 430, 431-32 (1858).

The record herein reflects Long's testimony that her numerous daily responsibilities in maintaining the house required full access to every portion of the building. She stated "it's not unusual for me to be in other parts of the house as part of my job." For example, Long frequently entered the students' rooms to check for safety hazards such as curling irons which occupants had failed to disconnect or turn off. Mr. Long also had "open access to all of the first floor portions of the house" and would often check the house at night for security purposes.

In addition, Long testified:

[T]here's the large TV out in the main house living room, which is where we will go if we have friends or such over, because our apartment area is very small, and we can't entertain. So we would be maybe out in the main house living room.

Long further indicated that at the time in question she and her husband kept their "road bikes, fifteen speed bikes," in the living room along with a training stand, "something you put the back tire of the bike up on so that you can ride it as a stationary bike." The training stand was "set up so that we could be training in the winter on the bike and watching the TV."

Moreover, Long declared that when "doing holiday cooking and such, or we were entertaining, I need to go into the main house refrigerator and freezer," but that "[w]hen I'm receiving my meals, when the house was open at the sorority house, I don't need to have as much refrigerator-freezer space."

Finally, Long stated she had personal items, including "sewing and crafts supplies and odds and ends" stored in a closet in the main house hallway which was "only accessible from a doorway [in the main house] that goes into the main house hallway." An additional closet in the main house was used by the Longs for storage of "luggage and out-of-season clothing and that kind of thing." Long and her

husband also parked their vehicle in one of the twenty-nine spaces allocated to residents of the house.

Based on the foregoing, we conclude the main portion of the sorority house contributed "in its way, to the comfort or convenience" of the Longs' apartment "as a dwelling." *Jenkins*, 50 N.C. at 431.

Moreover, the common areas of the sorority house are contiguous to the Longs' apartment, *prima facie* evidence of status as a portion of the "dwelling house." *Id.* at 431. The apartment is under the same roof and has one exterior entrance and three interior entrances, including a door which opens into their bedroom from the main hallway. There is also a primary entrance to the Longs' quarters located in the house foyer.

Under the facts of the case *sub judice*, we therefore hold that the common areas of the sorority house, appurtenant to the Longs' private apartment, are within the curtilage and a portion of the Long's "dwelling house" for purposes of the burglary statute. *See State v. Green*, 305 N.C. at 472-73, 290 S.E.2d at 630-31 (storage room constituted curtilage of a dwelling house so as to sustain conviction of first degree burglary where storage room entered was at back of house just behind occupied bedroom and storage room could be entered through an outside door or a window in the bedroom). *See also State v. Foster*, 129 N.C. 704, 40 S.E. 209 (1901) (defendant properly convicted of first degree burglary where he broke into a storeroom, off of which opened an occupied sleeping apartment); *State v. Mordecai*, 68 N.C. 207 (1873) (building within the curtilage of a residence, and regularly used as a sleeping room, is in contemplation of law, a "dwelling house" in which a burglary may be committed).

Our holding is consistent with the legislative purpose in specifying nighttime forcible entry to the occupied home of another as violative of the criminal law. "It is well to remember that the law of burglary is to protect people, not property." *Fields*, 315 N.C. at 196, 337 S.E.2d at 521.

It is evident that the offense of burglary at common law was considered one aimed at the security of the habitation rather than against property. That is to say, it was the circumstance of midnight terror aimed toward a man or his family who were in rightful repose in the sanctuary of the home, that was punished. . . . Such attempted immunity extended to a man's dwelling or man-

sion house has been said to be attributable to the early common-law principle that a man's home is his castle.

Parnell, *supra*, 43 A.L.R.2d at 834-35 (citation omitted).

Mr. Long testified the noises he and his wife heard in the main portion of the house were "directly next to us and through one wall" and outside their bedroom door which opens into the main hallway. The trial court noted this circumstance during the charge conference:

Certainly, at one point, the burglars were very close to the room that was being occupied by the Longs, just in the hall right outside their bedroom door.

Thus, the protection afforded those occupying a "dwelling house" includes the common areas of the house as part and parcel of the Longs' "dwelling."

The evidence revealed that the intruders traversed the hallways, stairs, foyer, and dining room of the sorority house—all common areas of the house within the curtilage of the Longs' apartment. The trial court's "assumption" that the Longs' apartment and the common areas of the sorority house "constituted but one dwelling" was therefore neither, in defendant's word, "impermissible," nor inaccurate. Accordingly, under *Long* and *Nelson*, the trial court's erroneous expression of opinion, based upon its proper, albeit tacit, consideration of the Longs' quarters and the common areas of the Kappa Kappa Gamma sorority house as a single "dwelling house," was non-prejudicial.

B.

[2] Defendant requested that the lesser-included offense of second degree burglary be submitted to the jury on the basis that it could find the dwelling house was not actually occupied. The State did not disagree. However, the trial court stated "it's my opinion that as far as the law is concerned, the sorority house was occupied." The court thereupon ordered the clerk to prepare a verdict form which allowed but two possible verdicts: guilty of first degree burglary or not guilty.

To justify a charge on second degree burglary, there must be evidence from which the jury could find that the dwelling house or sleeping apartment in question was unoccupied at the time of the breaking. *State v. Tippett*, 270 N.C. 588, 595, 155 S.E.2d 269, 274 (1967), *overruled on other grounds, State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68 (1994).

The record reveals that Mr. Long checked the entire premises before retiring to the Long's sleeping quarters and discovered nothing unusual. Shortly thereafter, the couple heard floorboards creaking and other sounds of movement within the main portion of the residence. Officers also located a door which had been broken, but which Mr. Long testified had not been damaged when he observed it during his security check of the premises. No evidence indicated either Mr. Long or his wife exited the premises prior to hearing the sounds of intruders.

"[W]here all the evidence is to the effect that the building was actually occupied at the time of the breaking and entry, the court is not authorized to instruct the jury that it may return a verdict of burglary in the second degree." *State v. Tippett*, 270 N.C. at 595, 155 S.E.2d at 274. *Cf. State v. Powell*, 297 N.C. 419, 424, 255 S.E.2d 154, 157 (1979) (failing to submit lesser-included offense of second degree burglary requires new trial where homeowners failed to check third bedroom before retiring to bed and never heard sound of breaking glass); *State v. Simons*, 65 N.C. App. 164, 166, 308 S.E.2d 502, 503 (1983) (court erred in failing to instruct on second degree burglary where neither victim checked the back bedroom before going to sleep and defendant could have entered before victims returned home).

Having previously determined the Long's apartment and the common areas of the sorority house to constitute the "dwelling house of Tim and Laura Long located at 302 Pittsboro Street" charged in the indictment, we conclude the evidence was uncontradicted that the house was, in the words of that indictment, "[a]t the time of the breaking and entering actually occupied by Tim and Laura Long." The trial court thus did not err in refusing to instruct the jury on the lesser included offense of second degree burglary.

II.

[3] Defendant next contends the trial court erred in its instruction to the jury on "acting in concert" by failing to include the element of presence at the scene. We disagree.

At trial, counsel for defendant submitted numerous proposed instructions to the jury; none contained any requested instruction on the legal theory of acting in concert. Moreover, defendant concedes in his appellate brief that he interposed no timely objection at trial to the court's jury charge or responses to jury inquiries. *See* N.C.R. App.

P. 10(b)(2). Assuming *arguendo* that the court committed error, therefore, defendant may not prevail on appeal unless the alleged error constitutes "plain error," *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

However, only in the "rare case" will an improper instruction "justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* at 661, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)). As defendant further concedes, moreover, the court's failure to instruct on presence may constitute plain error only when there is not substantial evidence of the defendant's actual or constructive presence at the scene of the crime. *State v. Gilmore,* 330 N.C. 167, 171, 409 S.E.2d 888, 890 (1991). *See also State v. Hunt,* 339 N.C. 622, 651, 457 S.E.2d 276, 292-93 (1994) ("It is well settled that a charge on presence at the scene of the crime is unnecessary in a case in which the evidence shows that the defendant was actually present at the time the crime was committed.").

The uncontradicted evidence in the record reveals that defendant was identified as one of two persons who hurriedly exited the dining room of the sorority house and that he was apprehended running from the residence by police who had surrounded the building. The evidence further reflects that a wallet belonging to one of the house residents was recovered from defendant's person. Suffice it to observe the foregoing comprises substantial evidence of defendant's actual and constructive presence at the scene. *See, e.g., State v. Ruffin,* 90 N.C. App. 712, 716, 370 S.E.2d 279, 281 (1988). Defendant's claim of "plain error" is therefore unavailing.

III.

Defendant final assignments of error are directed at the trial court's failure to instruct the jury on the possible verdicts of felonious and non-felonious breaking or entering. These contentions are unfounded.

While the statutory offense of felonious breaking or entering is a lesser included offense of burglary in the first degree, *State v. Fowler,* 1 N.C. App. 546, 548-49, 162 S.E.2d 37, 39 (1968), submission of this lesser included offense is required only when the evidence tends to show that defendant could have gained entry into the building in question by means other than a burglarious breaking. *State v. Jolly,*

STATE ex rel. LONG v. INTERSTATE CASUALTY INS. CO.

[120 N.C. App. 743 (1995)]

297 N.C. 121, 127, 254 S.E.2d 1, 5 (1979) (citations omitted). No such indication may be found in the evidence *sub judice.*

The lesser included offense of misdemeanor breaking and entering must be submitted to the jury if there is substantial evidence the defendant broke and entered for some non-felonious reason other than that alleged in the indictment. *See State v. Patton,* 80 N.C. App. 302, 305-06, 341 S.E.2d 744, 746-47 (1986). The indictment herein alleged defendant intended to commit larceny. The record indicates no other explanation for the unauthorized entry into the sorority house; submission to the jury of misdemeanor breaking or entering was therefore not required. *Cf. State v. Owen,* 111 N.C. App. 300, 309, 432 S.E.2d 378, 385 (1993) (reversible error in failing to submit misdemeanor breaking or entering where evidence indicated defendant merely wanted to retrieve his shotgun).

No error.

Judges COZORT and MARTIN, John C. concur.